## UNITED STATES v. McCLURE et al.
### No. 5859.

District Court, E. D. Pennsylvania.
Sept. 18, 1933.

Michael J. Stoney, Asst. U. S. Atty., and Charles D. McAvoy, U. S. Atty., both of Philadelphia, Pa., and Chet. A. Keyes, Sp. Asst. U. S. Atty. Gen.

Mervyn R. Turk, R. Paul Lessy, John E. McDonough, and J. B. Hannum, all of Chester, Pa., and Chas. Edwin Fox, Wm. T. Connor, John R. K. Scott, and James Gay Gordon, Sr., all of Philadelphia, Pa., for defendant.

WELSH, District Judge.

The defendants in this case were indicted on June 27, 1933, for conspiracy to violate certain provisions of the National Prohibition Act. On September the 9th, 1933, a number of pleas in abatement for various defendants were filed, and, for the purposes of argument and for the purposes of opinion, may all be taken together by agreement of the parties.

The plea in abatement alleges eight different reasons in support thereof, namely, noncompliance with the act of Congress relating to the impaneling of jurors and grand jurors; that the jurors so chosen were selected solely by persons other than those authorized by law to perform this duty; because the choice and selection so exercised was not made by the jury commissioner or clerk of the court; that such persons making the alleged selection excluded from their choice school teachers, clergymen, and physicians; failure to place the said names in the jury box alternately; because the names selected for grand jury service were not selected from the body of the electors, but from a selective group by persons not authorized by law; exclusion of persons from jury service for vocational and occupational reasons; and (clause 8) because persons not lawfully entitled to be present in the grand jury room were permitted to be present—all of which reasons appear in detail as set forth in the plea in abatement itself.

Nowhere in the plea in abatement do the defendants allege that, so far as concerns the first seven reasons assigned, were the defendants prejudiced thereby, nor was any evidence offered by the defendants or any charge made during the argument or discussion that the defendants were prejudiced.

The eighth reason alleged by the defendants, that persons were improperly admitted to the grand jury room while it was proceeding with its official function, does contain an allegation of prejudice to the defendants. However, no testimony was offered in support of this allegation; it was never touched upon nor referred to in any way during the argument, and the court therefore feels that it cannot sustain a plea in abatement under such circumstances so far as this particular phase of the subject is concerned.

A brief statement of the act of Congress in question and the facts adduced by defendants in support of the plea may help clarify the situation. The act of Congress is as follows (28 USCA § 412 [Jud. Code § 276, amended]):

"All such jurors, grand and petit, including those summoned during the session of the

court, shall be publicly drawn from a box containing, at the time of each drawing, the names of not less than three hundred persons, possessing the qualifications prescribed in the section last preceding, which names shall have been placed therein by the clerk of such court, or a duly qualified deputy clerk, and a commissioner, to be appointed by the judge thereof, or by the judge senior in commission in districts having more than one judge, which commissioner shall be a citizen of good standing, residing in the district in which such court is held, and a well-known member of the principal political party in the district in which the court is held opposing that to which the clerk, or a duly qualified deputy clerk then acting, may belong, the clerk, or a duly qualified deputy clerk, and said commissioner each to place one name in said box alternately, without reference to party affiliations until the whole number required shall be placed therein. (June 30, 1879, c. 52, § 2, 21 Stat. 43; Mar. 3, 1911, c. 231, § 276, 36 Stat. 1164; Feb. 3, 1917, c. 27, 39 Stat. 873.)

Defendants called Mr. James Gillespie, jury commissioner, a Democrat, 84 years of age. For seventeen or eighteen years he has been acting as jury commissioner. He stated that on a prior occasion, more or less remote, he had conferred with Mr. George Brodbeck, Republican, clerk of the United States District Court for many years, as to a list of persons to whom letters should be addressed, asking such persons to suggest names of qualified persons, in accordance with the terms of the letter, for jury service in the federal court; that last year, about November 15, 1932, Mr. Brodbeck forwarded to him a number of letters, five or six hundred, with the names of the addressees not filled in, signed by Mr. Brodbeck. This was the usual form of letter that had been used for many years for this purpose. He signed the letters. Later the persons written to replied, forwarding the names of persons considered by them fit for jury service. Shortly after this, Mr. Gillespie became ill, and, not being able to leave the house in January, 1933, Mr. Brodbeck came to his home, accompanied by a deputy clerk, and, after assuring himself or being assured that everything was all right, he stated that he and Mr. Brodbeck together placed the names of persons in the jury wheel, each one taking a handful at a time until all had been placed in the wheel. Mr. Gillespie said he did not sign any paper on that occasion, but later it was shown that he had signed a certificate required for that purpose, and the original paper with the signature of Mr. Gillespie

and Mr. Brodbeck was produced before the court.

Mr. Theodore Cobaugh testified that he had been a deputy clerk for thirty-odd years, and that, while he did not specifically have any responsibility with reference to the jury list he had a general knowledge of the way in which the work was handled, and his testimony was with reference to the more or less routine connected therewith. The court then asked Mr. Brodbeck, the clerk of the court, who has been connected therewith for over thirty years, as to his version of the course followed in the case in question. He testified that when he came into the office many years ago he found the present system in force. He had a list of five or six hundred names consisting of judges of the Supreme Court and judges of the Superior Court of Pennsylvania, living in this district, judges of the common pleas and orphans' court in this district, judges of the common pleas, judges of the orphans' court, judges of the municipal court in Philadelphia county; state senators living in this district, members of Congress living in this district, clergymen of all denominations, presidents and cashiers of national banks, state banks, and trust companies, men and women engaged in civic activities, certain (undesignated) officials of the city and county of Philadelphia, certain lawyers in the district who did not practice in the federal court, and other persons that he considered would be able to suggest fit and proper persons for jury service. The list of the persons so addressed appears in the record of the testimony.

It may be interesting to note that one of the defendants, Senator John J. McClure, was asked to suggest names. He replied by sending in a list of twelve or fourteen names, which names were placed in the jury wheel. The court calls attention to this merely to show the representative character of the persons addressed as an indication of whether or not the class of persons suggested, and who might ultimately be selected were representative and reflective of the intelligent and moral life of the community, irrespective of partisanship, creed, sex, or avocation or profession. Mr. Brodbeck further testified as to the incidents surrounding the selection of names by himself and the jury commissioner, Mr. Gillespie.

██ It is argued by defendants that the failure of Mr. Gillespie to suggest names in his own behalf and to place the names selected in the jury wheel, one at a time alter-

nately, constituted such an irregularity as to render the entire proceedings of the grand jury null and void. The court does not think such a conclusion warranted. There is no allegation of any fraud, no allegation or proof of any improper motive. The presumption is that a public official intrusted with a public duty performs that duty in a lawful manner. The facts in this case have not rebutted that presumption. Mr. Gillespie is the jury commissioner. The responsibility is his, and the methods that he may take in discharging that responsibility are for him to decide. He has been working in conjunction with the clerk of the court for many years. No departure from the established practice had been adopted. He was consulted at every stage of the proceedings. He could either comply, refuse to comply, or adopt any course that to him seemed wise. He was satisfied to do as he did, and, in the absence of fraud, improper motive, or prejudice to the defendants, the court cannot say that all proceedings incident thereto are null and void.

■ The fact that the names of prospective jurors were not taken up singly and alternately does not constitute a violation of the statute. See Gaughan v. U. S. (C. C. A.) 19 F. (2d) page 897; Hauptman v. U. S. (C. C. A.) 43 F. (2d) page 86; U. S. v. Greene (D. C.) 113 F. page 683.

■ With reference to the right of outside persons to suggest names of representative persons for jury service the court feels that the purposes of the act of Congress is to provide for the highest type of jurymen in the federal courts and to insure their selection without any risk of bias, prejudice, local feeling, or unfitness of any kind. For persons other than the jury commissioner and the clerk of the court to claim the right to suggest or name jurors would be grossly improper. See In re Petition for Special Grand Jury (D. C.) 50 F. (2d) 973. There is quite a distinction, however, between the claiming of the right to suggest names for jury service and a response to a letter of inquiry from the jury commissioner and the clerk of the court as to persons who may be considered by the addressees to be so qualified. In the first instance the jury commissioner and the clerk of the court would not function at all. In the second instance the jury commissioner and the clerk of the court take the initiative, seek information, receive a reply, consider the replies, and act therein in whatever manner they deem wise and prudent. This is their responsibility, and no court has a right to tell the duly constituted jury commissioners how they shall discharge the duties and responsibilities imposed upon them by the law. The court has the power only to declare their actions null and void under circumstances of malfeasance or misfeasance. To hold otherwise would justify judicial interference in other departments and bureaus not warranted by the Constitution or the law of the land.

■ The court feels that the unusual delay in making this plea requires comment. Seventy-two days elapsed from the finding of the bill of indictment until the plea was filed. The grand jury had the matter in charge for some weeks before making their presentment, so that the defendants had full notice for at least three months of the pending cases.

This delay is explained by a statement of two of the counsel for the defendants that in a casual conversation with reference to the manner of drawing jurors and grand jurors held with Mr. Cobaugh, deputy clerk, he made certain statements to them which are the basis of the contention relied upon by the defendants. There is no evidence that this was brought to the attention of the defendants themselves. The court feels that a dilatory plea asking to render null and void these entire proceedings is not properly founded upon circumstances so fraught with laches. This feeling is all the more justified when all the facts and circumstances surrounding the entire transaction are considered.

■ The court feels that the jury system is the bulwark of our liberties. All assaults improperly made upon it should be repulsed; all encroachments upon its purity and upon its purposes should be condemned. When it appears that proper safeguards for the selection of intelligent, moral, and fully qualified jurors have been adopted, it is the duty of the court to see that those methods are sustained. Mere technical departures, should they be proven, should not be held sufficient to warrant the finding that a safe and conservative practice relative to jury selection should be overthrown.

The plea in abatement is therefore overruled.