**UNITED STATES v. CHARLES KAZUYU-KI FUJIMOTO et al.**

Cr. No. 10495.

United States District Court
D. Hawaii.

June 12, 1952.

See also, 102 F.Supp. 890.

---

1. Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974.

728

Howard K. Hoddick, Acting U. S. Atty., Honolulu, Hawaii, Rex A. McKittrick, Thomas Mitchell, Sp. Assts. to Atty. Gen., for plaintiff.

Richard Gladstein, San Francisco, Cal., for defendants Charles Kazuyuki Fujimoto, Dwight James Freeman, Eileen Toshiko Fujimoto, John Ernest Reinecke.

Harriet Bouslog and Myer C. Symonds, Honolulu, T. H., for defendants Jack Wayne Hall, Jack Denichi Kimoto, Koji Ariyoshi.

Before Honorable ALBERT LEE STEPHENS, United States Circuit Judge, sitting by designation as United States District Judge.

STEPHENS, Circuit Judge.

On the 29th day of August, 1951, all of the persons named as defendants in the caption hereto were indicted by the United States Grand Jury for the Judicial District of Hawaii for the violation of "Sec. 3. of the Smith Act". 54 Stat. 671, 18 U.S.C. (1946 ed.) § 11, and 18 U.S.C. (1948 ed.) § 371.

Thereafter all of the defendants made a motion to dismiss the indictments on the ground that the grand jury was not validly selected. The basic ground alleged for the relief asked was that the method used in selecting the list from which members of the grand jury were chosen could not and did not result in a cross section of those persons in the District of Hawaii qualified to act as grand jurors but instead would and did result in the selection of many more members from the Caucasian group, many more members from the so-called upper economic or prosperous group including business managerial persons, than each of their group numbers entitled them to in any reasonable proportion, thereby resulting in an unreasonable under-proportion of members of other than the Caucasian race and of manual laborers and others in the less financially prosperous groups of citizenry of the Territory.

The defendants presented another motion to the same court to quash the trial jury panel drawn as prospective jurors to hear the trial.

Evidence both oral and written has been presented to the court upon both motions. I have had the benefit of able argument on behalf of both government and defendants and I have given careful attention to the very abundant statistical tables and their analysis by defendant-movant witnesses Dr. John E. Reinecke and Dr. Andrew W. Lind and by Masao Watanbe for the United States.

Much has been written upon the economic structure and the social compatibility of Hawaiians of every blood. There

are a few of us who clearly remember the period of the royal reigns of King Kalakaua (1874–1891) who was succeeded by his sister, Queen Liliuokalani (1891–1893) in ruling over the people and the territory of "The Paradise of the Pacific". The government was picturesquely paternal. The native Hawaiian was and is gentle and peaceful; the climate was and is ideal and Nature in the early days furnished vegetable and sea food in abundance. Because of the great distances from other lands, fear of war-like invasion was non-existent. The Caucasian missionary and farmer was an early immigrant, and the Portuguese, Spanish, Italian, Chinese, Japanese, Porto Rican, Filipino, and other people came with the advent of large, dependable ships upon voyages of discovery, adventure, and desire for better lives. Workmen came to labor in the developing sugar and pineapple plantations, which were held by a very few interests. Only in recent years the plantation laborers have been organized into unions and adjustment of interests between plantation operators and plantation labor remains incomplete to this day. The fact is that there is not the benevolent fusing of all economic, social, and racial strata in the Islands as some surface observers have depicted. Democracy has been established under American sovereignty but it does not work frictionless. In this welter of divergent philosophic, religious, and racial characteristics and clashing economic interests, the American doctrine of individual rights and free enterprise can thrive only through the strict adherence to the safety datum posts of Anglo-American jurisprudence. No one of them is more important than the jury system, both grand and petit.

### The Applicable General Law.

In Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181, the Supreme Court of the United States said, "* * * Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. * * *" In the same case the Supreme Court also said, 328 U.S. at page 220, 66 S.Ct. at page 985, "The American tradition of trial by jury, * * * necessarily contemplates an impartial jury drawn from a cross-section of the community. * * *"

The government in the instant case very properly quoted from Dow v. Carnegie-Illinois Steel Corp., D.C.W.D.Pa. 1951, 100 F.Supp. 494, 497: "For a jury panel to be invalid because of discrimination, there must be clear evidence of intent on part of the Jury Commissioner or Clerk, or both, to exclude, or to use a system of selection which is intended by them to result in exclusion of any person or group of persons from being called for jury service solely because of their economic status, occupation, race, sex, religion, social affiliation, or lack of it, political affiliation, or location of their homes geographically in the community. * * *"[1]

Proportional representation is not required, Fay v. People of State of New York, 1947, 332 U.S. 261, 291, 67 S.Ct. 1613, 91 L.Ed. 2043; Local 36 of International Fishermen & Allied Workers of America etc. v. United States, 9 Cir., 1949, 177 F.2d 320; and the burden is on the attacker of jury legality; and the Jury Commissioners are presumed to have discharged their duties properly. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

### The Local Law.

The Organic Act of the Territory of Hawaii, 48 U.S.C.A. § 491 et seq., provides in § 635 that "* * * all juries shall be constituted without reference to the race or place of nativity of the jurors; but no person who is not a male citizen of the United States and twenty-one years of age and who can not understandingly speak, read, and write the English language shall

---

1. By the Organic Act of the Territory, 48 U.S.C.A. § 636, and the Revised Laws of Hawaii, 1945, Ch. 195, § 9791(1), women are not qualified as jurors. The Act has been amended (April 1, 1952, Ch. 127, Pub.Law 289), striking this disqualification but is not yet in effect, and is not applicable to this proceeding.

be a qualified juror or grand juror in the Territory of Hawaii. * * * " [2]

Section 9791, Ch. 195, Rev.Laws of Hawaii, 1945, provides the following qualifications of a juror: He must be " * * * a male citizen * * * of the age of twenty-one years or over; possesses the qualifications for registration as a voter; * * * in possession of his natural faculties and not decrepit; * * * intelligent, and of good character; and * * * can understandingly speak, read and write the English language; and * * * selected, summoned, returned and sworn without reference to race, or place of nativity."

Section 9792 of the same laws provides that no person is qualified to act as a juror " * * * who has been convicted of any felony or of a misdemeanor involving moral turpitude."

Happily, both parties to the point at issue here have affirmatively asserted that it was the intention of each jury commissioner to assemble an impartial and legal list of prospective jurymen. Defendants' main efforts have been to show by the result obtained, that the method used could not and did not produce a legal list for the jury box. Happily, too, all counsel have cooperated perfectly to arrive at the truth with as little delay as possible. It is my problem to decide whether or not defendants have sustained their burden.

How the Jury Commissioners
Performed Their Duties.

■ Upon the judicial call for the assembling of a grand jury, the two commissioners, the Clerk of the United States District Court (herein called U. S. Clerk) and the Clerk of the City and County of Honolulu (herein called County Clerk) proceeded to act. With the current voters' list before him, each commissioner, acting alone, prepared a preliminary list of prospective jurors by passing his pencil over the pages and stopping to check names at random. The County Clerk confined his original checking to the Island of Oahu which constitutes the City and County of Honolulu which also is divided into the 4th and 5th Representative Districts. However, he principally confined his checking to the 5th Representative District. The U. S. Clerk checked the voters' list for the Island of Oahu but chose most of the names on his list from the 4th Representative District. He alone checked the voters' lists of the other islands. In this wise the U. S. Clerk selected 500 names more or less and the County Clerk selected somewhat fewer names. The U. S. Clerk modified this practice by seeking and obtaining from a prominent Negro a few names of persons of the Negro race. In addition to the voters' list the County Clerk had the benefit of registration cards upon which were recorded the registrant's name, address, number of his precinct and his occupation. In going down the voters' list he occasionally ran across a familiar name and if it indicated a person holding a responsible position he would put it on the list. The U. S. Clerk testified that " * * * first of all I tried to select or include all races" though not proportionately. As to persons known to him he said "I pick some of them". The basis of selection is, "Well, my judgment as to intelligence, education, character, or race." The County Clerk testified that some of his "selections were based on names that may have been predominantly Caucasian or Hawaiian or part Hawaiian but without excluding the other races." When the preliminary list was completed a questionnaire [3] was mailed to each name on it and as well to persons whose names had theretofore been placed in the box under

2. Section 83 of the Organic Act of the Territory of Hawaii, 48 U.S.C.A. § 635.
3. On the front side of the one-sheet questionnaire the following appears:
"To Prospective Jurors

"United States District Court
"District of Hawaii

"Note—Mail reply within 48 hours to Clerk, U. S. District Court, P. O. Box 3193, Honolulu, T. H.

"1. Full name
"2. Address, Residence ——————— Phone No. ———————
       Business ——————— Phone No. ———————
"3. Where born? ——————— Date of birth ———————

"4. If naturalized, when and where? ——————————————————————————

"5. How long in Territory? ——————————————————————————————

"6. Have you been indicted or convicted of any offense, if so, give details?

————————————————————————————————————————

"7. Married or single? ——————————————————————————————————

"8. Racial Extraction of father? ——————————— of Mother? ——————

"9. What experience have you had as a Juror? (Indicate whether Criminal or Civil cases) ——————————————————————————————————

"10. What is your present occupation and by whom employed? ————————

————————————————————————————————————————

"11. What has been your occupation during the past five years? ——————

————————————————————————————————————————

"12. What schools have you attended? ——————————————————————

————————————————————————————————————————

"13. What grade in school did you reach?——————————————————————

"14. Have you any defect of hearing, or sight, or other physical reason which would interfere with your serving as a juror, if so, what? ——————

————————————————————————————————————————

"15. Do you claim disqualification or exemption from jury service for any reason? (Give details) ——————————————————————————————

————————————————————————————————————————

"Date: ——————————————— Signature ——————————————————
"(See reverse side for qualifications and exemptions)"

On the reverse side of the one-sheet questionnaire the following appears:

"Qualifications, Exemptions

"Sec. 9791 R.L.H. 1945.

"Qualified When. A person is qualified to act as a juror or grand juror:

"1. If he is a male citizen of the United States, and of the Territory, of the age of twenty-one (21) years or over, and possesses the qualifications for registration as a voter, and is a resident of the circuit from which he is selected; and

"2. If he is in possession of his natural faculties and not decrepit; and

"3. If he is intelligent, and of good character; and

"4. If he can understandingly speak, read and write the English language; and

"5. If he is selected, summoned, returned and sworn without reference to race, or place of nativity.

"Sec. 9792 R.L.H. 1945.

"Disqualified When. A person is not competent to act as a juror who does not possess the qualifications prescribed by the preceding section, or who has been convicted of any felony or of a misdemeanor involving moral turpitude.

"Sec. 9793 R.L.H. 1945.

"Exempt When. A person is exempt from liability to act as a juror if he is:

"1. Over sixty years of age;

"2. An attorney at law;

"3. A salaried officer or employee of the United States, Territory, city and county or county;

"4. A minister of the gospel, or a priest of any denomination, following his profession;

"5. A teacher in a university, college, academy, school, or other place or institution of learning;

"6. A practicing physician, surgeon or dentist;

"7. An officer, keeper or attendant of an alms-house, hospital or asylum;

"8. A person employed on board of a vessel navigating the waters of or between the islands of the Territory, or on board of a vessel engaged in the coasting trade, or plying between any port of the United States and a port in a foreign country.

"9. A member of the militia when on active service, or an active member of a fire department of a village, town, city or other place in the Territory.

"(Note: Under Section 9793, a person is not disqualified but may claim exemption.)"

similar circumstances and had not been drawn out. After a reasonable lapse of time the two commissioners met to process the returned questionnaires. In the processing each commissioner separated the returned questionnaires into two piles, one which he had passed as coming within the requirements as to age, physical condition, intelligence, and ability to speak, read, and write the English language understandingly, the other which he had passed as not coming within such requirements. The commissioners then went over each pile together for agreement upon the names to be placed into the jury box or wheel. In the processing the commissioners rejected all names against which the official records showed a criminal or misdemeanor conviction had been laid, including misdemeanors which were not of the moral turpitude variety. While such latter rejection is not legally required, I am of the opinion that it cannot invalidate the list. Such persons so disqualified come from all groups and races and their elimination would not materially affect the cross section quality of the list.

In 1950 the use of a jury wheel was substituted for the old jury box and the U. S. Clerk testified as to the transition from the box to the wheel, as follows:

"I got an order from the Court directing the Jury Commissioners to make a new list out and place them into this wheel, and I had adopted the method of placing these slips in capsules so that when we withdrew all the names from the old box I had the Deputy Clerk readdress envelopes with the new blank questionnaire enclosed to all those names that were then remaining in this iron box. * * * And of course those questionnaires that were returned by those particular jurors were considered by the jury commissioners in preparing this list of 1950."

The term "repeaters" is sometimes applied to the names so remaining undrawn. About 30% of the 418 names constituting the source of the 1950 grand jury were on the jury list of 1948–1949.

I have already disposed of the point concerning the disqualification of prospective jurors because they had been charged with simple misdemeanors. It is contended that the questionnaire sent out contains questions as to race or racial extraction of parents notwithstanding the law provides that jurors shall be selected without reference to race, and that the commissioners took the answers to these questions into consideration. The U. S. Clerk testified that he made an effort to include the different races but there is no word of testimony that any person was eliminated or chosen because of the race to which he belonged. The County Clerk testified that he knew the Caucasian race predominated on the list. But this is not surprising when it is considered that the commissioners had the duty of selecting competent citizens at least twenty-one years of age who could understandingly speak, read and write the English language. It is true that the citizens of Japanese descent have a proportionately low representation on the list. The Japanese is a fecund race. How many of the Japanese citizens are under age, we have no showing. We do not know how many are able to speak only "pidgin" English, a jargon of ill-pronounced English words mixed with words of other languages and accented and intoned in the manner of the speaker's native tongue.[4]

It is true that, proportionately speaking, the population centers of the several islands

4. As was said in Fay v. People of State of New York, supra, 332 U.S. at page 277, 67 S.Ct. at page 1622, 91 L.Ed. 2043, " * * * Those who are illiterate or, if literate in their own, are unable to speak or write the English language, naturally find employment chiefly in manual work. It is impossible from the defendants' evidence in this case to find that the distribution of the jury panel among occupations [and we may add races] is not the result of the application of legitimate standards of disqualification.

"On the other hand, the evidence that there has been no discrimination as to occupation in selection of the panel, while from interested witnesses, whose duty it was to administer the law, is clear and positive and is neither contradicted nor improbable. * * * *"

have furnished more than an equal share of members on the jury list. The disproportion runs as high as five to one, estimated upon the basis of registered voters. There is practically no representation on the list of laborers in the large sugar and pineapple industries. All of these disproportions probably follow from the fact that the commissioners include on their list only persons whose questionnaries indicate their personal as well as legal qualifications to serve intelligently as jurors. There is no evidence that any person was rejected because of race or status of employment.

The reasons for the over-representation of Caucasians on the list, as heretofore set out, in a great measure also explain why the populous sections of the Islands, especially the City of Honolulu and the "better-to-do" portions of that city, have more than a true proportionate representation on the list. The evidence suggests that the commissioners may well have given too much weight to the positions held by citizens in order to get an "intelligent" and "competent" jury and this is understandable. It was, in most cases it may be assumed, the only means of knowing anything about the names chosen at random from the voters' list. There are (it would be folly to contend otherwise) deep cleavages between employer and employee and only in lesser degree between the employee in the managerial category and the so-called laborer. Not all of these cleavages are unhealthy, and most of them are transitory. No American is born or bound to class. There is no doubt that details in methods of selecting a grand jury can be worked out which will result in a truer "cross-section" of the ctizenry than those employed in the instant selection, but I do not perceive that the methods employed or the results obtained can justify a ruling that the grand jury which indicted defendants-movants was illegally constituted.

■ On August 24, 1951, a supplemental list of 147 names were selected and placed into the jury wheel and from this commingling of the 1950 list and the supplemental 1951 list 109 names have been drawn as prospective trial jurors in the instant case. The only differentiation in the method of selection was the elimination of all names whose owners had less than an eighth grade education. The change appears to have been made because one of the judges presiding in a former case complained as to the lack of intelligence of some on the jury list and suggested the eighth grade requirements. As said before, the commissioners were under the duty of selecting intelligent persons for their list. Of course, there are self-educated persons of average and above average intelligence who would make good jurors but it is not a civil right that the grand or petit jury should be chosen through a method that would give equal chance to serve to every qualified person. It must be remembered that the commissioners have no large staff of competent investigators to report details of each person whose name is tentatively placed on the jury list at random. One of the two United States judges who would use the jurors suggested a reasonable method of raising the intelligence of jurors and the commissioners followed it. I perceive no reason for holding illegal the grand jury which returned the indictments in suit, or to hold illegal the panel from which the trial jurors are to be drawn.

Let an order be entered denying each motion.