**UNITED STATES of America,**
**Plaintiff,**
**v.**
**Joseph BRANDT et al., Defendants.**
**Crim. No. 21076.**

United States District Court
N. D. Ohio, E. D.
July 29, 1955.

See also 139 F.Supp. 349.

Sumner Canary, U. S. Atty., Cleveland, Ohio, for the Government.

Yetta Land, Cleveland, Ohio, and Hymen Schlesinger, Pittsburgh, Pa., for defendants.

McNAMEE, District Judge.

At the time the grand jury was drawn on September 23, 1953 there were 353 names in the jury box. These names were placed in the box in March, 1952 and prior thereto. The defendants claim that by reason of death, illnesses, disabilities, and removals from the district there were less than 300 names of persons who were qualified for jury service at the time the grand jury was drawn.

No proof has been offered in support of the alleged number of disqualifications, but defendants request the court to fix a time for the taking of testimony on this issue. Such a hearing, entailing the examination of countless witnesses as to the competency and eligibility on September 23, 1953 of numerous prospective jurors, would be of inordinate length. But the request is not refused on this ground. It is denied because I am of the opinion that even if it were demonstrated by evidence that less than 300 of the 353 persons whose names were in the box were qualified to serve as jurors on September 23, 1953, this fact would not warrant a dismissal of the indictment. Defendants make no claim that they were prejudiced by this alleged deficiency. More importantly, they make no offer to prove that less than 300 of the persons whose names were in the box possessed the requisite statutory qualifications at the time they were selected for jury service by the clerk and commissioner.

Section 1864 of Title 28 U.S.Code is the governing statute and in its pertinent part provides:

"The names of grand and petit jurors shall be publicly drawn from a box *containing the names of not less than three hundred qualified persons at the time of each drawing.*

"The jury box shall from time to time be refilled by the clerk of court, or his deputy, and a jury commissioner, appointed by the court.

\* \* \* \* \*

"The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box without reference to party affiliations, until the box shall contain at least 300 names or such larger number as the court determines."

(Emphasis supplied.)

The court made no order requiring the

jury·officials to place more than 300 names in the box.

▌ It is the contention of the defendants that paragraph one of the above statute mandatorily requires that at the time of each drawing the jury box shall contain the names of at least 300 persons who at that time are qualified in all respects to serve as jurors. This construction is based upon a literal interpretation of the italicized language of paragraph one of the statute as quoted above. Its application would impose upon the clerk and commissioner onerous and additional duties not contemplated by the statute construed as a whole. It is a universally approved canon of construction that in resolving ambiguities in a statute courts must be guided by the legislative intent. Equally well settled is the rule that courts are not required to accept the literal interpretation of words in a statute where such meaning is repugnant to the true intention of the lawmaking body. 50 Am.Jur., Sec. 240; In re Russell, D.C., 28 F.2d 48; In re Blalock, D.C., 31 F.2d 612; Fleischmann Const. Co. v. United States, 270 U.S. 349, 46 S.Ct. 284, 70 L.Ed. 624; Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303.

 Section 1864 is not a model of precise statement. It leaves much to implication, but when considered with Section 1861, which defines the qualifications of jurors, the legislative intent becomes clear. Section 1864 imposes upon the clerk and jury commissioner the duties of selecting names of persons possessing the qualifications prescribed by Section 1861 and of placing at least 300 names of such persons in the jury box before a drawing is made.

 Because the drawing of panels would reduce the number of names in the box to less than 300, Congress directed that from time to time the "jury box shall be refilled" by the clerk and commissioner. The clear implication of this latter provision is that at the time the box is refilled, it must also contain the names of at least 300 persons who were

selected as qualified by the clerk and commissioner. These provisions make clear the legislative purpose to require the initial placement in the box of at least 300 names of persons selected as qualified by the jury officials, and to provide for their replenishment from time to time so that at the time of each drawing the box shall contain not less than the required minimum number of names of such persons. When the jury officials perform these specified duties they have done all that the statute requires them to do as a prerequisite to a valid drawing of a panel.

Neither Section 1864 nor any other section of the jury code imposes upon the clerk and commissioner other duties in relation to the determination of qualifications or the placing of names in the box.

There will always be intervening periods of time, either long or short, between the procedures of placing names in the box and the drawing of a panel. During these intervals, events may occur that affect the competency and eligibility of persons whose names are in the box. Prospective jurors may die, become disabled, or move from the district. These disqualifying contingencies are beyond the control of the jury officials and cannot be taken into account in defining their duties.

 Congress did not intend that the jury officials should maintain constant surveillance over the physical, mental, and residential status of the persons whose names were in the box. The statute does not impose upon the jury officials the mandatory duty of supplementing the specified minimum number of names by an additional number sufficient to offset any reduction of qualified jurors resulting from unforeseeable circumstances. However, under the construction of the statute for which defendants contend, the jury officials would be mandatorily required to place and keep *more* than 300 names in the box. In no other way could they be reasonably certain that at the time of each drawing the box would contain the names of not less than 300 persons who were then

qualified in all respects to serve as jurors. There is no provision in the statute requiring the jury officials to have more than 300 names in the box at any time, and no such requirement can be interpolated therein except by court order or legislative action.

 Under the procedure outlined by the statute the clerk and commissioner are required to determine the qualifications of persons for jury service before their names are placed in the box. As used in the statute, the words "qualified persons" refer to persons whose names were placed in the box by the clerk and commissioner and necessarily mean persons who were selected by those officials as possessing the statutory qualifications of jurors. This being so, the statutory clause "at the time of each drawing" must be held to refer to those occasions when the jury box shall contain not less than 300 names of persons who were selected by the jury officials as possessing the requisite qualifications. As thus construed, the statute fixes positive and definite standards of duty upon the clerk and commissioner. They are mandatorily required to place and keep in the jury box not less than 300 names of persons whom they have selected as being qualified. While the statute fixes the minimum number of names the box must contain, it places no limitation on the maximum number that may be placed therein. In their discretion the jury officials may place more than 300 names in the box. However, in the absence of an order of the court, they are not required to do so. Absent such order, it is the minimum of 300 names, twice mentioned in the statute, that is the measure of the mandatory duty imposed upon the jury officials. It cannot be supposed that Congress acted unreasonably and defined the mandatory duties of these officials in terms of their discretionary authority.

As I read the statute, it was the legislative judgment, subject to revision upward by the court, that 300 names of qualified persons would be adequate to provide a representative cross-section of the community from which panels of jurors fairly may be drawn. It cannot be doubted that in fixing this minimum Congress took into account such accidental or fortuitous depletions in the number of qualified persons as might occur after the box was filled.

Implicit in the argument of defendants is the notion that the statute demands perfect performance by the jury officials in their selections of qualified persons. This is erroneous. Of course the jury officials must make diligent efforts in good faith to ascertain whether persons selected by them possess the requisite qualifications; but, inasmuch as they are required to rely in large part upon representations of the prospective jurors or of others, the possibilities of error due to mistake or misrepresentation must be taken into account. The pertinent statutes and rules authorizing the court to dismiss or excuse from service prospective jurors who are not legally qualified, are designed to protect against such errors. But even if the defendants' argument were sound, the burden would still be theirs to establish that the jury officials were derelict in the performance of their duty. This the defendants have not done. They make no offer to prove that less than 300 of the 353 persons whose names were in the box on September 23, 1953 possessed the requisite qualifications of jurors at the times they were selected for jury service by the clerk and commissioner in March, 1952 and prior thereto.

For the reasons hereinabove discussed, an offer to prove that less than 300 of those persons were eligible for jury service on September 23, 1953 is irrelevant.

 An examination and comparison of the statute with its predecessor (Section 412 of Title 28 U.S.C.) tends to confirm the correctness of the above construction of the statute. As reenacted in 1948, Section 412 became Section 1864. At the same time, Section 1861, defining the qualifications of jurors superseded former Section 411. This necessitated changes in the phraseology of Section 412 when it became Section 1864, but

the essential meaning of the earlier statute was retained. This is shown by a comparison of Section 1864 with its predecessor section. In its pertinent part Section 1864 provides:

"The names of grand and petit jurors shall be publicly drawn from a box containing the names of not less than three hundred qualified persons at the time of each drawing.

\* \* \* \* \*

"The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box without reference to party affiliations, until the box shall contain at least 300 names or such larger number as the court determines."

In so far as pertinent for purposes of comparison, Section 412 provided:

"All such jurors, grand and petit, including those summoned during the session of the court, shall be publicly drawn from a box containing, at the time of each drawing, the names of not less than three hundred persons, possessing the qualifications prescribed in the section last preceding, which names shall have been placed therein by the clerk of such court, or a duly qualified deputy clerk, and a commissioner, to be appointed by the judge thereof, \* \* \*."

It will be observed that Section 412 provided for the same minimum number of names as does Section 1864. There is no ambiguity in Section 412. The language of that statute clearly spells out the fact that in its reference to the qualifications of persons for jury service Congress meant persons who were selected as qualified by the clerk and commissioner. Section 1864 has the same meaning. The clause "at the time of each drawing," which in Section 412 appears immediately before the reference to qualifications, has been transposed in the later Act so that in Section 1864

this clause follows the words "qualified persons." But the significance of this clause—which merely designates the times when the box must contain a minimum of 300 names of persons selected as qualified by the jury officials—has not been changed, although its present position at the end of paragraph one of Section 1864 tends to obscure its true meaning. While the construction of the statute, which is here held to be correct, reads more easily upon the earlier section than upon Section 1864, it is in complete harmony with the terms and purpose of the present statute.

No case construing Section 1864 is to be found in the books. The only case in point that arose under former Section 412 is United States v. Rondeau, C.C., 16 F. 109. In that case there were 300 names in the box at the time the grand jury was drawn. Three of the persons had died and three were ineligible at the time of the drawing. In overruling a challenge to the array which was made on the same ground as asserted here, the court held that if less than 300 names were in the box at the time of the drawing, the statute would have been violated. But the court also held that it was not a mandatory requirement of the statute that all of the 300 persons whose names were in the box be absolutely qualified for jury service when the drawing was made.

No question of non-feasance of the clerk and commissioner, such as was found in United States v. Silverman, a.k.a. Sid Taylor, D.C., 129 F.Supp. 496, arises here. Under the circumstances of this case the jury officials were justified in relying upon their sources of information as to the qualifications of the prospective jurors. All of the twenty-three persons who served on the grand jury were fully qualified for such service.

Defendants' request for a hearing is overruled and their motion to dismiss the indictment on the ground hereinabove discussed also is overruled.