Alvin CHANCE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19597.

United States Court of Appeals
Fifth Circuit.

Aug. 27, 1963.

Brown, Circuit Judge, dissented.

J. Edward Worton, Jos. P. Manners, Miami, Fla., for appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., J. Frank Cunningham, Marshall Tamor Golding, Attys., Dept. of Justice, Washington, D. C., Chester Bedell, Jacksonville, Fla., W. Sanders Gramling, W. G. Ward, William C. Steel, George F. Gilleland, Miami, Fla., (Amicus Curiae) Herbert J. Miller, Jr., Asst. Atty. Gen., Crim. Div., Dept. of Justice, Edith House, U. S. Atty., Southern Dist. of Florida, for appellee.

Before CAMERON and BROWN, Circuit Judges, and WHITEHURST, District Judge.

WHITEHURST, District Judge.

The question before us is whether the court below erred in denying appellant's motion to dismiss the indictment on the ground that the grand jury which returned it was summoned and empaneled contrary to law. We hold that it did not.

The grand jury attacked is that drawn in 1960 from the Miami box covering primarily Dade and Broward counties. In Dade County the names were obtained from three sources: (a) the list of male registered voters;[1] (b) the list of women who had registered for jury service;[2] and Negro citizens recommended by local Negro ministers and business leaders.[3] In Dade County, names obtained from the list of voters were chosen from scattered precincts in an effort to avoid choosing as prospective jurors those who may have served within the past few years. A map was kept in the clerk's office and when precincts had been selected in filling the previous box in 1957, those precincts had been marked. The precincts used in the 1959 box (from which the instant jury was drawn) were marked with a contrasting color. No names had been taken from the voter lists in precincts predominantly Negro, but many had doubtless been selected from those precincts among the names furnished by Negro leaders.

In Broward County, a few names of male voters were taken at random from each precinct. In addition, the list of women who had registered for state jury service was used. The box was filled in June and July of 1959 with five thousand names; in December, 1959 it was discovered that no names from the Miami Beach and Coral Gables communities had been selected and an additional one thousand names from those areas were added.

Appellant and *amici*, coming forward with a multiplex attack on the makeup of the grand jury, argue that (1) selection of names from the state voter registration lists is unlawful *per se*;[4] (2) Negroes were excluded; (3) women

---

1. In Florida, state jurors must be "duly qualified electors": F.S.A. § 40.01 "Qualifications and disqualifications of jurors.
   "(1) Grand and petit jurors shall be taken from the male and female persons over the age of twenty-one years, who are citizens of this state, and who have resided in the state for one year and in their respective counties for six months, and who are duly qualified electors of their respective counties; provided, however, that the name of no female person shall be taken for jury service unless said person has registered with the clerk of the circuit court her desire to be placed on the list. * * * "

2. In Florida, only women who register for jury service are qualified to serve. F.S.A. § 40.01. Footnote 1.

3. The record indicates that the Negro population of Dade and Broward counties is approximately twelve percent of the total population; approximately ten percent of the names placed in the box were those of Negroes.

4. By the Civil Rights Act of 1957, the requirement that federal jurors be eligible for state juries was abolished. 28 U.S. C.A. § 1861, as amended, establishes the current qualifications for federal jurors:
   "Any citizen of the United States who has attained the age of 21 years and re-

were excluded; (4) the names did not represent a cross-section of the community; (5) the names of three hundred qualified persons [5] were not present in the box; and (6) the names were not properly placed [6] in the box.

■ Thiel v. Southern Pacific Company, 1946, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, lists six groups or classes which may not be excluded as jurors: economical, social, religious, racial, political, geographical. This listing should form the basis of our judgment as we consider the several points of attack.

■ (1) The use of voter registration lists is not unlawful *per se*. Gorin v. United States, 1 Cir., 1963, 313 F.2d 641; United States v. Greenberg, D.C. N.Y.1961, 200 F.Supp. 382; United States v. Van Allen, D.C.N.Y.1962, 208 F.Supp. 331; cf. United States v. Henderson, 7 Cir., 1962, 298 F.2d 522. The use of voter registration lists is unlawful only if such use is a subterfuge to exclude systematically and intentionally members of those groups or classes, inasmuch as those who fail to register are not a cognizable class, Gorin, 313 F.2d at page 644:

> "For a variety of reasons we reject the argument that eligible persons who do not register to vote constitute a 'political' group in the community. In the first place the group does not include only the politically inert. It includes also the politically alert who may perhaps have lived for a year or more in the district but not long enough

in their ward to be eligible to register to vote. In the second place, the group has no distinct or definable outlines, for in addition to persons who have just moved into a ward, it includes not only the completely apathetic but also those who might register to vote only when interested in a particular election. It includes persons of varying shades of political interest. And in the third place we think the Court in referring to a political group in the Thiel case meant the members of some defined political party or group. "This does not mean blanket endorsement of jury selection directly or indirectly from voting lists. It means that voting lists may be used as the basis for jury selection unless it appears that in the community there is systematic and intentional exclusion from those lists of a particular economic, social, religious, racial, geographical or political group. When such a showing is made some other basis of selection must be used. Here, however, the appellants have not shown that in Boston any enumerated class is systematically and intentionally discriminated against in registering to vote. Indeed the evidence is quite to the contrary. The appellants' contention fails for lack of any evidence of discrimination in the preparation of the lists of Boston voters. Compare United States v. Hoffa, 196 F.Supp. 25 (S.D.Fla., 1961), with United States v. Green-

---

sides within the judicial district, is competent to serve as a grand or petit juror unless:

"(1) He has been convicted in a state or federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.

"(2) He is unable to read, write, speak and understand the English language.

"(3) He is incapable, by reason of mental or physical infirmities to render efficient jury service."

5. 28 U.S.C.A. § 1864.

"Manner of drawing; jury commissioners and their compensation

"The names of grand and petit jurors shall be publicly drawn from a box containing the names of not less than three hundred qualified persons at the time of each drawing. * * *

"The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box without reference to party affiliations, until the box shall contain at least 300 names or such larger number as the court determines. * * *"

6. See footnote 5.

berg, 200 F.Supp. 382 (S.D.N.Y., 1961)."

The only decision to the contrary is United States v. Hoffa, D.C.Fla., 1961, 196 F.Supp. 25, which is distinguishable on its facts. There, male voter registration lists and lists of women who volunteered for state jury services (who were necessarily registered to vote) were the exclusive sources of names. Such is not the case here. Even assuming that the Gorin case was not correctly decided, this case is not one in which those who failed to register were systematically and intentionally excluded and, even under Hoffa, the grand jury would not be illegal as a matter of law.

■ (2) The record indicates that members of the Negro race constitute approximately twelve percent of the population of Dade and Broward counties and that approximately ten percent of the names in the box were those of Negroes. The contention that Negroes were excluded or represented only in a "token" fashion is untenable.

■ (3) Before 1957 one of the disqualifications for federal jury service was that "He is incompetent to serve as a grand or petit juror by the law of the state in which the district court is held." 28 U.S.C.A. § 1861(4) (repealed). Ballard v. United States [7] held that in states *in which women were not disqualified to sit on state juries,* the systematic and intentional exclusion of women from federal juries was unlaw-

ful. The amendment of the federal statute in 1947 merely removed subsection (4) of 28 U.S.C.A. § 1861 and in effect made Ballard controlling in all states, whether women were disqualified from state jury service or not. The effect, therefore, is to condemn the systematic and intentional exclusion of women from federal juries. It is clear that women were not excluded as a matter of fact, much less by any system, from the grand jury here in question. The record indicates that three women served on the panel under attack.

■ (4) Appellant's main contention is that the grand jury did not represent a cross-section [8] of the community. At the most, the notion of a jury as a cross-section of the community is a conceptual [9] one. A literal cross-section is neither required nor desired. Those persons who have been convicted of a crime and not pardoned, those not competent in the English language, and those mentally or physically infirm are disqualified under 28 U.S.C.A. § 1861. Many people and classes are granted exemptions and exclusions under 28 U.S.C.A. §§ 1862, 1863. In many sections of this country, a Spanish-speaking community is predominant. An English-speaking jury is certainly not a "cross-section" of such a community.

■ Nobody contends that to obtain a "cross-section" it would be required that names be taken at random from the totality of the inhabitants of the

---

7. 1946, 329 U.S. 187, 67 S.Ct. 261, 91 L. Ed. 181.

8. United States v. Foster, 1949, D.C.N.Y., 83 F.Supp. 197, 201, says that the law requires a "fair and impartial cross-section of the community." The phrase "cross-section" was used in Glasser v. United States, 1942, 315 U.S. 60, 86, 62 S.Ct. 457, 472, 86 L.Ed. 680; Thiel v. Southern Pacific Co., supra, 328 U.S. at 220, 66 S.Ct. at 985–986, 90 L.Ed. 1181; Ballard v. United States, supra, 329 U.S. at 191, 67 S.Ct. at 263, 91 L.Ed. 181. Glasser, 315 U.S. at p. 85, 62 S.Ct. at pp. 471–472, 86 L.Ed. 680, quoted from Smith v. Texas, 1940, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84: "It is part of the established tradition in the

use of juries as instruments of public justice that the jury be a body truly representative of the community." Cf. Gorin v. United States, supra, 313 F.2d at p. 644, " * * * it has never been the law that a jury must represent a true cross-section of the community. See Report of the Committee on the Operation of the Jury System to the Judicial Conference of the United States, September, 1962, at page 6 * * *"

9. Webster's New International Dictionary, Second Edition, Unabridged, 1955: "Concept * * * 2. *Philos.* An idea, as distinguished from a precept; * * *"
"Precept * * * 1. An authoritative command; order; mandate * * *"

area in order to comply with 28 U.S. C.A. § 1861. No particular pattern has been prescribed for use by the jury commission in determining the source of jury personnel, however, suggestions are to be found in the report of the Judicial Conference Committee on the Operation of the Jury System, 26 F.R.D. 409, 470. As Judge Learned Hand so cogently stated:

> "It is perhaps in order to say a word about the phrase itself—'cross-section,'—because the defendants so much rely upon it. It means a fair sample; and a sample drawn at random from the whole community will of course represent the distribution of wealth in the community as a whole, as it would represent the distribution of age, height, predisposition to sclerosis, or any other characteristic; but nobody contends that the list must be a sample of the whole community. Minors and the aged are excluded, as are the insane and those of unsound mind, and practically so are all the exempt; a sample at random with any of those included would be different from that which concededly the law may and does prescribe." United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, 224, affirmed, 1951, 341 U.S. 484, 71 S.Ct. 857, 95 L.Ed. 1137.

■■ The use of names from scattered precincts in a county is not in and of itself unlawful unless it be demonstrated that, in so doing, some cognizable group described in Thiel, supra, is thereby systematically and intentionally excluded. A question of fact is raised here, as is so in most cases. The court below found that there was no such exclusion and we cannot say that such a finding was clearly erroneous. The record clearly indicates, moreover, that the officials here involved made a positive and conscientious effort to choose a fair sample of the community for jury service.

The statutes provide no affirmative requirements of the officials in gathering names for the jury box. See United States v. Greenberg, D.C.N.Y., 1961, 200 F.Supp. 382. In fact, some standard system to be followed was advocated by certain of the senators in the debates over the Civil Rights Act of 1957, and the criticism of the present system advanced was that there was no such requirement. See Congressional Record, Vol. 103, Pt. 10. The Congress did not, however, adopt these arguments and the law as it now stands places the officials under no mandatory or positive commands; they are, on the contrary, controlled by one negative requirement: they may not discriminate,[10] directly or indirectly.

10. As pointed out in United States v. Flynn, 2 Cir., 1954, 216 F.2d 354, "a fair sample" is all that is required to meet the legal definition of a cross-section of the community. Proportional representation is not necessary, either as a constitutional requirement, Hoyt v. Florida, 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed. 2d 118; Fay v. New York, 1947, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Akins v. Texas, 1945, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692, or to meet the statutory standards for federal courts, United States v. Flynn, supra; Dow v. Carnegie-Illinois Steel Corp., 3 Cir., 1955, 224 F. 2d 414; United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, affirmed 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; United States v. Greenberg, supra; United States v. Romano, D.C.Conn.1961, 191 F.Supp. 772; United States v. Fujimoto, D.C.Hawaii, 1952, 102 F.Supp.

890; United States v. Foster, D.C.N.Y. 1949, 83 F.Supp. 197. As the matter was put in Flynn, answering an asserted ground for reversal ("Failure of Jury Clerks to Employ Methods Which Would Insure Representation of a Cross-section") which is almost a paraphrase of appellant's and *amici's* contentions here:
[216 F.2d p. 388] "We need devote little time to this phrase of the challenge, for it is palpably a plea for proportional representation, or at least something approaching it, which has never been a part of the Anglo-American jury system and, indeed, is repugnant to that system."
And as Judge Medina phrased it in United States v. Foster, supra, a particularly apposite reply to the position urged here by appellant and *amici:*
[183 F.Supp. p. 208] "In the last analysis this challenge comes down to the asser-

(5) Appellant contends that the statutory requirements were not met in that the names were not drawn "from a box containing the names of not less than three hundred qualified persons," 28 U.S.C.A. § 1864. This argument rests upon the failure of the officials to determine individually the qualification of each of the six thousand prospective jurors before his or her name was put in the box. If the jury officials had substantial information concerning the eligibility of the prospective jurors, it is not necessary that a conclusive decision be made as to each name. This whole question was dealt with recently by the Court of the Eighth Circuit in Beatrice Foods Co. v. United States, 1963, 312 F.2d 29, and we quote in the margin an extended excerpt from that case beginning at page 35.[11]

The statute requires that the box contain names of "not less than three hundred qualified persons." Most of the

tion, contrary to all legal precedents, that those who administer the jury system must by some means produce a jury list which shall have proportional representation of Negroes, manual workers, poor people, and members of various racial and religious groups. Any attempt to secure such representation would not only result in chaos and confusion but, in my judgment, would inevitably breed the very intolerance which every right-minded person should be vigilant to avoid."

There thus being no necessity to strive for proportional representation, "All that is expected of the jury officials charged with the duty of providing a pool of qualified jurors is that the methods of selection used are reasonably designed to produce a representative cross-section of the community in the light of the practical means available." United States v. Greenberg, supra, 200 F.Supp. p. 389. The efforts of the jury officials are, of course, subject to judicial scrutiny, but the intensity of the scrutiny is to be tempered by the leavening of practicality. As was observed in Dow 224 F.2d at p. 427, "Practical considerations nonetheless are relevant in a determination of the reasonableness of methods." See also United States v. Henderson, 7 Cir., 1962, 298 F.2d 522, 523; United States v. Local 36 of International Fishermen, S.D.Cal., 1947, 70 F.Supp. 782.

11. "It was suggested long ago that the placing of names of qualified persons in the jury box is mandatory. United States v. Chaires, C.C.N.D.Fla., 1889, 40 F. 820, 821. Since then, some courts have specifically so held. United States v. Silverman, D.Conn., 1955, 129 F.Supp. 496, 511; United States v. Brandt, N.D.Ohio, 1955, 139 F.Supp. 362, 365. It has been said, too, that the duty of selection cannot be delegated by jury officials. Glasser v. United States, 1942, 315 U.S. 60, 85, 62 S.Ct. 457, 86 L.Ed. 680. However, Congress has prescribed no particular method of jury selection. 'The choice of the means * * * rests largely in the sound discretion of the trial courts and their officers' under the guidance of the pertinent statutes. Thiel v. Southern Pacific Co., supra, pp. 220–221 of 328 U.S. p. 986 of 66 S.Ct. [90 L.Ed. 1181]; Glasser v. United States, supra, p. 86 of 315 U.S. p. 457 of 62 S.Ct. [86 L.Ed. 680]. There is a presumption that the jury officials have discharged their duties properly. Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, 110, cert. den. 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597; United States v. Charles Kazuyuki Fujimoto, D.Hawaii, 1952, 105 F.Supp. 727, 729. When the defense claims the existence of a fatal flaw in the selection process it has the burden of overcoming that presumption. Frazier v. United States, 1948, 335 U.S. 497, 503, 69 S.Ct. 201, 93 L.Ed. 187; United States v. Silverman, supra, p. 511 of 129 F.Supp.; Walker v. United States, 8 Cir., 1937, 93 F.2d 383, 392, cert. den. 303 U.S. 644, 58 S.Ct. 642, 82 L.Ed. 1103; Bailey v. Henslee, 8 Cir., 1961, 287 F.2d 936, 942, cert. den. 368 U.S. 877, 82 S.Ct. 121, 7 L. Ed.2d 78.

"Accepting all this, we are not persuaded by Beatrice's challenge to the array * * *

[312 F.2d p. 36] "(c) The questionnaires employed were not as desirably complete as they might have been. They did not inquire for example, as to a prospect's fluency in English, as to his criminal record and as to his mental and physical capacities. Yet they did advise him of the purpose of the questionnaire itself and they did inquire as to his being a voter. The filling out of the form and its return would result in some indication of the prospect's language ability and of his infirmities. Voting status under Nebraska law would presumably show United States citizenship, at least six months' residence in the district, R.R.S. Neb.1943 § 32–102, and something as to criminal record, R.R.S.Neb. §§ 29–112

names were taken from voter lists and most Florida voters [12] are eligible for federal jury service. Presumably the Negro leaders who furnished names were guided by the proper standards. We do not think the court below was clearly in error in holding that there were names of three hundred qualified persons in the box; the evidence is overwhelming that there were.

(6) The last objection is to the physical manner in which the names were placed in the box. The statute [13] provides that the commissioner and clerk "alternately place one name in the jury box." It is undisputed that, in this case, the names were placed in the box by alternate handfuls. This is a very technical deviation from the statutory procedure and is no basis for a successful challenge to the grand jury. Hauptman v. United States, 1930, 9 Cir., 43 F.2d 86; Gaughan v. United States, 1927, 8 Cir., 19 F.2d 897; United States v. McClure, D.C.Penn.1933, 4 F.Supp.

668; United States v. Greene, D.C.Ga. 1902, 113 F. 683. Presumably, the two officials agreed as to the names and, in that case, any disagreement which the statutory procedure was intended to settle did not arise.

"Jury lists are not conceived out of thin air." Thiel v. Southern Pacific Co.,[14] D.C.Cal.1946, 67 F.Supp. 934, 943. "Congress has not chosen to establish any uniform system of selecting * * * [jurors] but it has left to each district the adoption of suitable methods to obtain the necessary talesmen." United States v. Greenberg, supra, 200 F.Supp. at p. 388. We hold that the methods used in selecting the grand jury in question were not unlawful and that there was no systematic and intentional exclusion of any cognizable group or class and that there was substantial technical compliance with the statutes. To hold otherwise would be "to make of the grand jury a pawn in a technical game instead of respecting it as a great historic in-

and 29–102. The information requested as to age, occupation and employer is not completely unrevealing as to capacity. Furthermore, the letter to each sponsor quoted § 1861. The sponsor therefore knew exactly what was required for those he was to recommend as prospective jurors. We are not free to presume that he ignored these requirements. * * * [312 F.2d p. 37] "(h) Although perfection in jury selection is of course desired, it is too much to expect that the system in every federal judicial district will be conducted and will operate with the precision of a fine timepiece. Perfect performance is not required. United States v. Brandt, supra, p. 365 of 139 F.Supp. This is why we have the many safeguards consisting of the use of the box itself, the drawing of names from it, the large number of names required, and the like. At the very most, there were mere irregularities in the selection of the grand jury which indicated Beatrice and its codefendants. In the absence of individual prejudice to the defendant, these do not justify dismissal of the indictment. [Citing cases.]"

12. F.S.A. § 97.041: "Qualifications to register.
"Any person twenty-one years of age, at the time of registration, upon proof of

his birth date, who is a citizen of the United States, a permanent resident living in Florida for one year and residing in the county where he wishes to register for six months, is eligible to register with the supervisor when the registration books are open. Naturalized citizens must present to the registration officer a certificate of naturalization or certified copy thereof. The following persons are not entitled to vote:
"1. Persons not registered.
"2. Persons under guardianship or confined in any state prison.
"3. Persons insane or idiotic.
"4. Persons convicted of any felony by any court of record and whose civil rights have not been restored.
"5. Persons convicted of bribery, perjury, larceny or any infamous crime in this or other state, or interested in any wager depending on the result of any election.
"6. Persons not registered to vote in the precinct in which they have their permanent place of residence."

13. 28 U.S.C.A. § 1864, see footnote 6.

14. On remand from Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181.

strument of lay inquiry into criminal wrongdoing." United States v. Johnson, 1943, 319 U.S. 503, 512, 63 S.Ct. 1233, 1237–1238, 87 L.Ed. 1546.

The judgment appealed from is right and it is

Affirmed.

JOHN R. BROWN, Circuit Judge (dissenting).

In the face of the very persuasive opinion of Judge Whitehurst, I am reluctant to differ. Nevertheless, I think the practice of including (a) only those males who have registered to vote and (b) only the females who have *volunteered* for jury service does not meet the requirements, 28 U.S.C.A. § 1861, of a constitutionally empaneled Grand Jury. I therefore align myself with Judge Lieb's opinion in United States v. Hoffa, S.D.Fla., 1961, 196 F.Supp. 25, and respectfully dissent from the present opinion of this Court.