**UNITED STATES of America,**
**Plaintiff,**

v.

**STANDARD OIL COMPANY et al.,**
**Defendants.**

**Cr. No. 2168.**

United States District Court
N. D. Indiana,
South Bend Division.
July 19, 1958.

---

Earl A. Jinkinson, Chief, Midwest Office, Antitrust Division, Chicago, Ill., Phil M. McNagny, U. S. Atty., Northern District of Indiana, Fort Wayne, Ind., for the Government.

Walter T. Kuhlmey (of Kirkland, Fleming, Green, Martin & Ellis), Chicago, Ill., and George N. Beamer (of Crumpacker, May, Beamer, Levy & Searer), South Bend, Ind., for defendant Standard Oil Co. of Indiana.

Herman J. Schmidt, General Counsel, Mobil Oil Co., New York City, and John J. Scott, Associate General Counsel, Mobil Oil Co., New York City, and Edward F. Howrey (of Howrey & Simon), Washington, D. C., and Joseph B. Kennedy, Jr. (of Howrey & Simon), Washington, D. C., and J. Arthur Kelly, Chicago, Ill., and James E. Keating, South Bend, Ind., for Socony Mobil Oil Co.

W. B. Edwards, and C. B. Jarrett, Jr., Pittsburgh, Pa., David T. Searls, Houston, Tex., and Joseph A. Roper, South Bend, Ind., for Gulf Oil Corp.

John Blair Moffett, Chief Counsel, Philadelphia, Pa., Henry A. Frye, Philadelphia, Pa., Louis L. Anderson, South Bend, Ind., for Sun Oil Co.

William K. Tell, Findley, Ohio, Thomas M. Scanlon, Louis A. Highmark (of Barnes, Hickam, Pantzer & Boyd), Indianapolis, Ind., Thomas L. Murray (of Seebirt, Oare, Deahl & Thornburg), South Bend, Ind., for Ohio Oil Co.

Walter L. Barnes, Bartlesville, Okl., Howard P. Robinson, Howard Neitzert, Chicago, Ill., and Bruce Hammerschmidt, South Bend, Ind., for Phillips Petroleum Co.

Gentry Lee, Bartlesville, Okl., General Counsel, E. Gray Hayden, Chicago, Ill., Norman Kopec, South Bend, Ind., for Cities Service Oil Co.

F. D. Gorman, Amzy B. Steed, Oscar John Dorwin, New York City, James W. Campbell, Chicago, Ill., for Texas Co.

Irving Slifkin, New York City, Timothy I. McKnight, Chicago, Ill., Elbert A. Hugill, Jr., New York City, Timothy P. Galvin, Hammond, Ind., for Shell Oil Co.

John E. Doran, South Bend, Ind., for Central West Oil Corp.

Louis Shifrin, St. Louis, Mo., for Tornado Oil Co.

Roland Obenchain, Jr., and Milton A. Johnson, South Bend, Ind., Irvin C. Klinock, Kansas City, Mo., for Hudson Oil Co.

Paul R. Summers, Indianapolis, Ind., Lloyd M. Allen, South Bend, Ind., for Gaseteria.

William F. McInerny, South Bend, Ind., for Pacer Oil Co., Inc.

GRANT, District Judge.

The Grand Jury indictment in this criminal action charges the defendants with engaging in an "unlawful combination and conspiracy in unreasonable restraint" of gasoline traffic in interstate commerce. 15 U.S.C.A. Section 1.

The indictment charges that beginning on April 25, 1957, the defendants and certain co-conspirators engaged in an unlawful combination and conspiracy in violation of the Sherman Act, that the unlawful combination consisted in an understanding and agreement entered into among said defendants that the defendants and certain co-conspirators would increase the pump price of gasoline at all gasoline service stations operated by the defendants and the co-conspirators within the defined market area. The indictment alleges that the effect of this activity was the increasing and stabilizing of prices for gasoline sold to consumers within the defined market area thus having the total effect of restraining interstate trade in gasoline.

The defendants filed their Motion "C" and requested in such motion that the Court dismiss the indictment. Defendants contend that an illegally con-stituted Grand Jury returned the indictment herein in that the Jury Commissioner and the Clerk of this United States District Court failed to follow the provisions set forth in Title 28 U.S.C.A. Section 1864:

"The names of grand and petit jurors shall be *publicly* drawn from a box containing the names of not less than *three hundred qualified persons* at the time of each drawing. (Emphasis added.)

"The jury box shall from time to time, be refilled by the clerk of the court, or his deputy, and a jury commissioner, appointed by the court.

\* \* \* \* \* \*

"The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box without reference to party affiliations, until the box shall contain at least 300 names or such larger number as the court determines."

The provisions of the Code set out above are mandatory requirements imposed by the Congress to guide the Clerk and the Jury Commissioner in the selection of prospective jurors. United States v. Brandt, D.C., 139 F.Supp. 362. The intent of the Congress in enacting these provisions is not difficult of ascertainment when we consider the guiding reasons and purpose for such enactments. The right to trial by jury is a precious American heritage which Americans guard most jealously, in point of fact, our forebearers saw fit to make this guarantee a part of the Bill of Rights. The statutory enactment under consideration merely dictates a procedure which must be followed to the end that no arbitrary or capricious procedure will be involved in the selection of a jury, but such selection is left entirely to the realm of chance.

Mr. Kenneth Lackey, Clerk of the United States District Court for the Northern District of Indiana, and Mr. Walter Pickert, Jury Commissioner of this Northern District, testified in this cause relative to the procedure utilized

and employed by the Jury Commission in obtaining names for their jury files; the procedure in checking the qualifications of the prospective jurors, the filing and place of filing of such names and the physical location and manner in which such names were drawn for the Grand Jury panel which returned this present indictment.

The Clerk testified that he had a total of 1500 prospective jurors' names in a filing cabinet in his Hammond, Indiana, office. These names were acquired over a period of five years. The Clerk was directed by the Honorable Luther M. Swygert, Chief Judge of this Northern District, to draw a panel of jurors in this cause, limiting the number drawn to 50 names.

■ The defendants allege that the circumstances surrounding the drawing of these names did not amount to a "publicly drawn" body of prospective jurors. Mr. Lackey's testimony shows that the drawing took place in the Clerk's office in Hammond. The doors to such office were unlocked at all times herein mentioned and lawyers, court personnel and the public had access to this office. From these circumstances we find that the names drawn were "publicly drawn" within the meaning and contemplation of the statute. Hammerschmidt v. United States, 6 Cir., 287 F. 817.

Defendants contend that the qualifications of the prospective jurors were not checked immediately prior to the drawing by the Commission and some of the available names in the Commission's files had not been checked for a period of some five years. Title 28 U.S.C.A. Section 1861. The testimony of Mr. Lackey bears out this contention as he testified that 2% or 3% of the names in the file had been placed there by his predecessor in office. The Clerk testified that he had never ascertained the qualifications of these prospective jurors to his own satisfaction at the time he assumed office but had only checked with his predecessor as to these qualifications. The Clerk testified further that the only qualification check made as to the remaining names was the questionnaire he sent out to prospective jurors.

■ As to the exact procedure of the drawing, the Clerk testified that the 300 cards from Lake County would be removed from the file and would then be shuffled, face down, on his desk. These Lake County cards would then be thoroughly mixed, following which the Clerk and the Jury Commissioner would alternately draw a predetermined number of names from that county. The remaining Lake County cards would then be returned to the file cabinet. The procedure, Mr. Lackey testified, was to draw a larger number of names from the county in which the Grand Jury was to meet. Mr. Lackey testified that this same procedure was repeated as to each of the counties from which names were to be drawn and that the drawing of a predetermined number would be made from the cards of only one county at a time. For example, the 35 cards from Elkhart County would be shuffled and then from those 35 cards 2 cards would be drawn. The remaining 33 Elkhart County cards would then be returned to the file cabinet before proceeding to the next county.

Below are listed the number of cards containing prospective jurors' names from each county and the number of cards the Jury Commission decided should be selected from each county:

| County | Total number of cards | Number drawn |
|---|---|---|
| St. Joseph | 200 | 10 |
| Whitley | 40 | 2 |
| Elkhart | 35 | 2 |
| Porter | 85 | 2 |
| LaPorte | 50 | 2 |
| Jasper | 40 | 3 |
| Fulton | 50 | 1 |
| Marshall | 45 | 2 |
| Allen | 200 | 5 |
| Lake | 300 | 20 |
| Newton | 40 | 1 |

Mr. Lackey testified that no jury box as such was used in these drawings but

that the drawings were conducted from the top of the Clerk's desk, using that as a "single depositary".

This Court is of the opinion that the Government failed to follow the mandatory provisions of Section 1864 of Title 28 U.S.C.A. The language of the statute is clear and unambiguous in spelling out in no little detail the procedural steps which must be followed by the Clerk of the Court and the Jury Commissioner in drawing a jury panel. The testimony of Mr. Lackey (which was substantiated further by the testimony of Mr. Walter Pickert, the Jury Commissioner) certainly supports the contention that the procedure outlined in the Code was definitely not followed. The names were not *"publicly drawn from a box containing the names of not less than three hundred qualified persons at the time of each drawing."* The method of selection which was, in fact, employed in this instance falls far short of that intended by the Congress.

As counsel for both sides have said so well and so often, there is no question as to the integrity of this Jury Commission. Both Mr. Lackey and Mr. Pickert are honorable men. These men have attempted to perform this public duty and to fulfil the obligations of their public trust with the greatest ardor and with the taxpayers' best interests in mind. But this zeal for doing the job well led to their departure from the plain letter of the statute. The departure of the Jury Commission from the mandatory terms of the statute leads to an illegally constituted Grand Jury which returned this indictment. For this reason the indictment must fall. The type of arbitrary selection employed here could lead to grave dangers and could be a harmful weapon in the hands of less honorable men than those who comprise this Jury Commission.

Our whole constitutional background points to the necessity of having the selection of our juries free of the whim and caprice of the selectors. Such selection must be strictly within the realm of chance. Caprice is sometimes only a matter of degree. The Congress has removed the selection of juries from the area of whim and fancy and has set forth in clear, unequivocal terms the procedure which *must* be followed. The language of its directions is clear, precise, concise and unambiguous.

It is not necessary that there be a showing of prejudice to defendants in order to render this indictment defective. Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed.2d 181.

Motion of defendants to dismiss the indictment is hereby granted.

The indictment is hereby ordered dismissed.