### YOUNG v. UNITED STATES.
### DEER v. SAME.
### POLK v. SAME.
#### Nos. 3475, 3476, 3477.

Circuit Court of Appeals, Tenth Circuit.
May 11, 1948.
Writ of Certiorari Denied June 21, 1948.
See 68 S.Ct. 1533.

Howard Payne, of Olathe, Kan., and A. D. Weiskirch, of Wichita, Kan. (Edward Rooney, of Topeka, Kan., on the brief), for appellants.

Randolph Carpenter, U. S. Atty., and Lester Luther, Asst. U. S. Atty., both of Topeka, Kan. (Eugene W. Davis, Asst. U. S. Atty., of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellants, Lee Young, Lee Deer, Ralph Polk, and others were indicted in the District Court of Kansas on five counts. The first count charged a conspiracy under 18 U.S.C.A. § 88, to carry on the business of a wholesale liquor dealer in Sedgwick County, Kansas, without paying the special taxes in violation of 26 U.S.C.A. Int.Rev.Code, § 3253; purchasing and receiving distilled spirits in quantities greater than twenty gallons from persons other than authorized dealers of distilled spirits in violation of 26 U.S.C.A.Int.Rev.Code, § 2860; wilfully failing and refusing to keep records of such business in violation of 26 U.S.C.A.Int.Rev.Code, § 2857; failing and refusing to keep conspicuously on the outside of the place of such business a sign stating that they were "wholesale liquor dealers" in violation of 26 U.S.C.A.Int. Rev.Code, § 2831; and importing quantities of intoxicating liquors from the State of Illinois into the State of Kansas, in violation of the Liquor Enforcement Act of 1936, 49 Stat.1928, 27 U.S.C.A. § 223. Twenty-five overt acts were set forth in execution of the conspiracy. Counts Two, Three, Four and Five charged the appellants and others jointly with the violation of the offenses respectively set forth as the objects of the conspiracy in Count One.

Upon a jury trial, appellant Young was convicted and sentenced on Count One (conspiracy), and Count Four (failing to keep records). Appellant Deer was convicted and sentenced on Count One (conspiracy), Count Two (failure to pay the tax as a wholesale liquor dealer), and Count Five (failure to post signs). Appellant Polk was convicted and sentenced on Count Two (failure to pay the tax as a wholesale liquor dealer), and Count Five (failure to post signs). The appellants have filed separate appeals, but all three contend that there is no substantial evidence to support the convictions, and that the trial court should therefore have directed a verdict of acquittal as to each of them.

The evidence submitted on the trial of the case reasonably tends to establish the following facts: William A. Burch, who was indicted and pleaded guilty to the conspiracy count, was the owner and operator of a truck line with a franchise from Chicago to Wichita, via Kansas City. Polk was the operator of what is known as the Canyon Supper Club in Wichita, Kansas, where liquor was sold at retail under a retail liquor dealer's special tax stamp. Sometime in the latter part of 1942, appellants Polk and Deer discussed with Burch at his truck terminal on Francis Street in Wichita, the matter of Burch hauling liquor from Chicago to Wichita in his transportation equipment. After two conferences in Wichita, Burch and

Deer met at the Blackstone Hotel in Chicago early in 1943. At that conference, it was agreed that Burch would contact one of his drivers named Lower, whom, the parties seemed to agree, could be trusted to undertake the job of driving the trucks. Thereafter, Burch did contact Lower, who agreed to drive the trucks for $150.00 per month in addition to his regular compensation. It was agreed that Burch would receive about $500.00 per load for hauling the liquor, and the amount later was raised to $800.00 per load. Burch notified Polk where Lower could be contacted in Chicago.

Thereafter, Lower began hauling truck loads of liquor from Chicago to Burch's terminal in Wichita. Before each trip, he would be called at his hotel room in Chicago and told to go to a designated place, whence he would be further directed to some warehouse or vacant lot, where the liquor would be loaded. On at least fifteen or twenty occasions, Deer was present when the liquor was loaded. When Lower would arrive in Wichita, he usually stopped at his home and called Adams, Burch's terminal manager, who would direct him when to come to the terminal. When he arrived at the terminal, always between eleven and one o'clock at night, he was usually met by Polk and Deer and sometimes William Herndon and Dean Pricer. The liquor would be taken from the truck van, the serial numbers on the cases either cut out or torn off, the liquor loaded into Chevrolet and Ford trucks, and driven away by either Polk, Deer, Pricer or Herndon. There was no direct evidence as to where the liquor was taken from the terminal, but it never came to rest there.

During the years 1943, 1944 and the first half of 1945, Lower hauled between sixty and seventy loads of liquor, containing approximately three hundred cases each, or an aggregate of eighteen to twenty thousand cases. On several occasions, Deer paid Lower approximately $200 for the loss of time due to the layover in Chicago waiting for directions with respect to the loading of the liquor. Lower paid part of this money to his relief driver. On more than twenty occasions, Polk paid Adams extra money for unloading the liquor at the terminal. Burch was paid approximately $60,000 for hauling the liquor. It was paid by Polk to Burch, usually on the streets in Wichita, in currency, pursuant to a prearranged appointment.

Appellant Young points out that there is no evidence tending to identify him with the arrangements for or the transportation of the liquor from Chicago to Wichita, and that therefore the jury was not justified in finding him guilty on the conspiracy charge.

One of the alleged objects of the conspiracy was to engage in the business of a wholesale liquor dealer without paying the required tax. Thus, the scheme laid in the indictment contemplated not only the transportation of the liquor from Chicago to the Burch terminal, but from there to a place where it was sold in wholesale quantities.

The evidence shows that Young resided on a well improved farm near Wichita, and that he was in the liquor business. Two Alcohol Tax Unit investigators testified that in April 1945, Young exhibited to them approximately three hundred cases of assorted brands of liquor, bearing Illinois, Nebraska and Missouri liquor stamps, from some of which the serial numbers had been torn off or cut out. Herndon was present at Young's farm, and Young introduced him to the investigators as his "partner in business". When, shortly thereafter, the same investigators met Young on the street in Wichita, he stated to them that Herndon was his partner, and that he became excited when the federal officers came out. Several witnesses testified that they were in the retail liquor business in or near Wichita, and had purchased liquor in wholesale quantities from Young on various occasions during 1943, 1944 and 1945. One of the witnesses testified that he purchased liquor from Herndon at the Young farm. Neither Young, Deer nor Polk had wholesale liquor dealer stamps during the years 1943, 1944 and 1945, except that Young held one from September 28 until October 18, 1944. They did not file reports required of wholesale liquor dealers, and there were no wholesale liquor dealer signs at the Young farm, or at

the Burch terminal, or at any other place operated by the appellants.

■■ It is well to remember that in the very nature of things, unlawful conspiracies are seldom provable by direct and positive evidence. Ordinarily they must be established by circumstantial evidence, and "it is sufficient if the circumstances, acts, and conduct of the parties are of such character that the minds of reasonable men can conclude therefrom that an unlawful agreement exists." Garhart v. United States, 10 Cir., 157 F.2d 777, 781. See also Wilder v. United States, 10 Cir., 100 F.2d 177. Nor is it essential that each conspirator participate in or have knowledge of all of the operations of the conspiracy. It is enough if a conspiracy is formed, and the several persons convicted knowingly contributed their efforts in furtherance of it. Berenbeim v. United States, 10 Cir., 164 F.2d 679.

■ The evidence is amply sufficient to show that an agreement to transport liquor from Chicago to Wichita was formed in the early part of 1943, and that pursuant to such agreement, liquor in very large quantities was transported from Chicago to the Burch terminal in Wichita, where it was immediately loaded into trucks for destinations elsewhere. The jury was justified in believing that Young's partner, Herndon, assisted in the transportation of liquor from Burch's terminal, and that part of it at least found its way to the Young farm, where it was unlawfully sold in wholesale quantities. This being so, it was justified in finding that the unlawful conspiracy laid in the indictment was formed, the prime object of which was to carry on the business of a wholesale liquor dealer without paying the required tax, and that Young was a conscious participator in the integrated scheme. The fact that Herndon was acquitted of the charge of conspiracy does not vitiate the jury's verdict of guilty as to Young. See United States v. Fox, 3 Cir., 130 F.2d 56; United States v. Austin-Bagley, 2 Cir., 31 F.2d 229; Belvin v. United States, 4 Cir., 12 F.2d 548.

■ Appellant Deer argues that since it is not directly shown that a final agreement was reached between him, Burch and Polk on the matter of the transportation of the liquor, he cannot be held to have been a party to the conspiracy, if one did in fact exist. But there can be no doubt of the substantiality of the evidence in support of the jury's verdict as to Deer on the conspiracy count.

■ Deer also complains of certain statements in the argument of Government counsel, contending that the effect of them was to call the jury's attention to his failure to take the witness stand. It is sufficient to say in that connection that in the first place, no objections were made to the argument, and the jury was instructed in unmistakable terms that the failure of any defendant to take the witness stand was no evidence against him, and should not be considered in determining his guilt or innocence. Furthermore, when the challenged statement of the Government counsel is considered in its context, we do not think it was intended to, or did have the effect of emphasizing the failure of Deer to take the witness stand.

Both Polk and Deer challenged the sufficiency of the evidence to sustain the verdict of the jury finding them guilty of carrying on the business of a wholesale liquor dealer (Count Two), and failure to post the required wholesale liquor signs (Count Five). The Government is challenged to show from the record where Deer ever sold any liquor to any one in any quantity, or that Polk ever sold any liquor in wholesale quantities, except one isolated transaction, in which Burch testified that he purchased five cases of liquor from Polk in 1944 at cost for a Christmas party. It is argued in that connection, in behalf of Polk, that one isolated transaction is no proof that he was carrying on the business of a wholesale liquor dealer.

■ It is true that apart from the sale to Burch, there is no direct proof that either Deer or Polk carried on the business of a wholesale liquor dealer. But, as we have seen, there is evidence from which the jury was justified in believing that Polk and Deer actively cooperated in the transportation of about twenty thousand cases of liquor from Chicago to Wichita. From

the Burch terminal, it was loaded into trucks operated by Deer and Polk. There is no direct evidence as to what disposition was made of it from that point, but the jury was justified in concluding that a part of it at least found its way to the Young farm, where it was sold in wholesale quantities. Polk testified that the large quantities of liquor coming into his possession at the Burch terminal were sold at retail at his supper club, where he held a retail liquor dealer stamp. But, we have said that the jury was justified in finding that Deer, Young and others entered into a criminal partnership to transport liquor from Chicago to Wichita to carry on the business of a wholesale liquor dealer. From the very large quantities of liquor which are shown to have been transported in pursuance of that arrangement, we think the jury was justified in finding that Polk and Deer were engaged in carrying on the business of a wholesale liquor dealer, and that the jury was justified in drawing this conclusion from the facts without considering the sale of five cases to Burch.

 All of the appellants complain of the manifest inconsistency of the jury's verdict. Young's conviction on the conspiracy count and acquittal on the substantive offense of carrying on the business of a wholesale liquor dealer, and Polk's acquittal on the conspiracy charge and conviction of carrying on the business of a wholesale liquor dealer, is against the stream of the evidence. Young's conviction of failing to keep records as a wholesaler is inconsistent with his acquittal on the charge of carrying on the business of a wholesale liquor dealer; Deer's conviction on the conspiracy count is inconsistent with Polk's acquittal on the same count, since the evidence seems to be of equal weight against the two; and the evidence points more strongly to Young's guilt as a wholesale liquor dealer, of which he was acquitted, than to the guilt of Deer and Polk on the same charge, of which they were convicted. The verdicts are illogical and perhaps irreconcilable with the weight of the evidence, but this court is not the judge of the weight of the evidence, or the consistency of the verdicts based thereon. If a verdict of the jury finds support in the record, it is not our province to overturn it simply because it is inconsistent with another verdict involving the same defendant or co-defendant. Jury verdicts may not be upset by speculation or inquiry into whether they were the result of compromise or mistake on the part of the jury. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Borum v. United States, 284 U.S. 596, 52 S.Ct. 205, 76 L.Ed. 513; Pilgreen v. United States, 8 Cir., 157 F.2d 427; Downing v. United States, 8 Cir., 157 F.2d 738; Mogoll v. United States, 5 Cir., 158 F.2d 792. We hold that the evidence is sufficient to support the verdicts of the jury, upon which the judgment of the court rests, and they are therefore severally sustained.

Finally, the appellants renew the contention made in the motion to remand (Young v. United States, 10 Cir., 163 F. 2d 187), to the effect that the verdict of the jury was reached by means other than by a fair expression of the opinion on the part of all the jurors, and that we erred in denying the appellants' motions to remand the cases for a new trial. Our attention is again called to the separate affidavits of each of the jurors to the effect that they intended to find Polk guilty of entering into the conspiracy, but not guilty of carrying on the business of a wholesale liquor dealer, and to find Young guilty of carrying on the business of a wholesale liquor dealer but not guilty of the conspiracy count; that they did not learn of the mistake until after the verdict had been returned and the jury discharged.

 After mature consideration of this point in the former appeal, we recognized that the general rule "excluding testimony or affidavits of jurors to impeach the verdict for misconduct of members of the jury occurring within the jury room and in connection with the deliberations of the jury does not prevent the reception of evidence of jurors to show that through mistake, the real verdict on which agreement was reached in the jury room was not correctly expressed in the verdict returned into open court." We pointed out, however, that neither of the appellants sought to "have the verdict as to him corrected or reformed so that it will express con-

viction on the counts on which the jury intended and agreed to find him guilty. Instead, each seeks to have the verdict finding him guilty completely uprooted and nullified in toto, and a new trial awarded." This we refused to do. No other relief is sought on this appeal, and we adhere to the views formerly expressed.

The judgment is affirmed.

PHILLIPS, Circuit Judge, concurring.

Appellants urge that they did not discover the alleged errors in the verdicts returned until after the jurors had been discharged and separated and had gone their respective ways, and that the trial court was then powerless to correct the errors in such verdicts, and for that reason they were entitled to a new trial. While I fully adhere to the views expressed in our former opinion in these cases, I deem it advisable to express my opinion with respect to the above contention not heretofore urged by appellants.

It is my opinion that until the trial court finally loses jurisdiction over the judgment, on a proper showing by appellants that the formal written verdicts returned, through error of the jurors in writing up their formal verdicts, did not reflect the actual verdicts agreed upon in the jury room, it may correct the written verdicts to speak the truth.

The circumstances that the jurors had been discharged and separated might be a reason for the court requiring a greater quantum of proof to establish the alleged errors in the verdicts, but such circumstances would not in my opinion deprive the court of the power to correct the written verdicts so as to truly reflect the actual verdicts agreed upon the by jurors.

Surely a court that still retains jurisdiction over a case is not rendered impotent to correct an error in a verdict clearly established, by the mere circumstances that the jurors had been discharged and separated and thus permit error to prevail over truth. I cannot agree that any such defect exists in our criminal processes. Truth and justice, not error and injustice, are the ends sought to be obtained in the administration of criminal justice and a trial judge should be, and in my opinion is, endowed with power so long as he retains jurisdiction over a case, to do what may be necessary to attain those ends.

It follows that appellants did not avail themselves of the remedy open to them.

The views I have expressed are probably implicit in the opinion of the court but it seems desirable to me to express them explicitly.