**Rex Stidham WINDOM, Jr., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 5897.**

United States Court of Appeals
Tenth Circuit.

Oct. 8, 1958.

Timothy P. Woolston, Albuquerque, N. M., on brief for appellant.

J. C. Ryan, Albuquerque, N. M. (James A. Borland, Albuquerque, N. M., on the brief), for appellee.

Before MURRAH, PICKETT and BREITENSTEIN, Circuit Judges.

MURRAH, *Circuit Judge.*

The defendant below appeals from a judgment of the United States District Court for New Mexico, on a jury verdict of guilty on two counts in an indictment charging the interstate transportation of certain forged cashier's checks, in violation of 18 U.S.C.A. § 2314. The only point on appeal is the refusal of the court on timely motion to quash the jury array on the asserted ground that only persons of "elevated social, economic and political status" were selected to serve on the jury panel.

Examination of the United States District Court Clerk, who, with an appointed Jury Commissioner, selected the jury panel, disclosed that form letters were sent to key persons in the various counties of New Mexico requesting suggestions of names of persons qualified to serve on juries. These form letters expressed a desire "to compile a jury list composed of good citizens from the several counties of the state representing a cross-section of the population, fairly apportioned as to sex and racial origin." These key persons submitted the names of suggested jurors, who were in turn sent questionnaires, asking their name, age, occupation, residence, length of residence in New Mexico, understanding of the English language, and exemptions and qualifications. The jury panel was selected from these qualified persons.

No attack is made on this procedure for selecting federal jurors, and indeed it has been specifically approved by the courts. Walker v. United States, 8 Cir., 93 F.2d 383; United States v. Brandt, D.C., 139 F.Supp. 349; United States v. McClure, D.C., 4 F.Supp. 668. Instead, the attack is directed against the refusal of the court to require the jury commission to disclose the names of the key persons in order that counsel might examine them concerning the "motives and bases" of their recommendations. The court's stated reason for refusing to reveal the identity of the key persons was to protect them from harassment, both by those wishing to serve on juries and those wishing to avoid jury service.

■■ In the exercise of its superintending power in the administration of federal criminal justice, the appellate courts have been quick to strike down any conviction by a jury in the selection of which members of any race, creed or economic status are systematically excluded. See Bary v. United States, 10 Cir., 248 F.2d 201. Thus, it has been held improper to exclude women, although eligible, Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181; to draw the jury discriminatingly from the membership of particular private organizations, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; to exclude daily wage earners, Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (a civil case). And, the 14th Amendment forbids the conviction of any person for a state offense by a jury from which members of the accused's race are systematically excluded. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, and cases collected. And, this protective shield extends to the palpably guilty as well as the innocent and oppressed.

■■ But the burden of making a showing that some class was improperly excluded from the jury lies with the defense. Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187. We will not presume that the key persons did not follow instructions to recommend persons who are fairly representative of the whole population of their communities. Surely, some showing of a disposition to discriminate is prerequisite to a searching investigation. The court should not be required to permit a full scale investigation of its jury panel until it is suspect.

■ This record is devoid of any suggestion of improper discrimination. The venire, from which the jury to try the defendant was to be selected, was undoubtedly available for interrogation concerning their race, creed or economic status. By this readily available means, the defendant could have effectively discovered any indication of a disposition toward economic discrimination, thereby laying the necessary predicate for the examination of the key persons to show any improper exclusion. Some refutation of the trial court's statement that "we have on our regular panel and every term of court people from almost every walk of life, every nationality, religious creed, and every race * * *" is necessary.

In the absence of such showing, there was no factual justification for a carte blanche interrogation of these key persons, and the trial court did not err in its refusal to permit it.

The judgment is affirmed.