Charles W. PADGETT, Appellant,

v.

BUXTON–SMITH MERCANTILE COMPANY and Floyd R. Ehrmann, Appellees.

No. 6405.

United States Court of Appeals Tenth Circuit.

Nov. 2, 1960.

See also 262 F.2d 39.

598

Eugene E. Klecan, Albuquerque, N. M. (William J. Bingham, Albuquerque, N. M., was with him on the brief), for appellant.

James C. Ritchie, Albuquerque, N. M. (Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., was with him on the brief), for appellees.

Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this automobile accident case, with jurisdiction resting on diversity, the ground for appeal from the judgment entered upon a jury verdict in favor of the defendants is the denial of appellant-plaintiff's challenge to the jury array because of the alleged exclusion therefrom of persons in the social and economic status of the plaintiff, a manual laborer and wage earner. The challenge is to the array, i. e., the entire group of individuals whose names went into the box from which the names of prospective petit jurors were drawn.[1] The basis for the challenge is that on the panel from which was drawn the jury that heard the case there was no one below the economic status of foreman.

In selecting names to go into the box, the first task is to compile a list of individuals residing in the district who may be available for jury duty. The source of such names varies from district to district. In some federal districts, city or telephone directories, state jury lists, poll books, tax records and other like media are employed. In New Mexico and other districts the procedure is to obtain from key persons located throughout the state lists of individuals whom they suggest for jury service. Common-

ly, as in New Mexico, questionnaires are then sent to the individuals whose names have been obtained from the source used. These are examined by the clerk of the court and the jury commissioner and an agreed number are selected for inclusion within the group that makes up the box from which the panels are drawn.

Plaintiff does not complain of the manner in which the panel was drawn from the box or of the procedure followed in drawing prospective jurors for his case from the panel. Instead, he first attacks the source of the names used in filling up the box and, second, the selection of names from that source for inclusion in the box.

The clerk of the court testified that in November, 1959, he and the jury commissioner examined between 3,000 and 4,000 questionnaires which had been returned by persons whose names had been obtained from key men living at various points in the state. From this total, 810 names were put in the box. A panel of 50 was then drawn from the box for the jury term in which the instant case was tried. The reduction of this number by court-granted excuses required two additional drawings of 8 names each to fill out the panel.

In Windom v. United States, 10 Cir., 260 F.2d 384, we approved the New Mexico system of the use of key men as a source of the names of individuals to whom questionnaires were sent. While we are asked to re-examine that decision, we decline to do so. Neither statutory nor case-made law requires the use of any particular source of names so long as there is no systematic exclusion of the members of any race, creed, social or economic group. The difficulty with the use of the key-men system is that on occasion it arouses attacks such as here made. At the same time problems are presented by the use of other sources. When poll lists are employed, there is an exclusion of those who do not vote. Likewise, the use of the tax rolls eliminates those who pay no taxes and telephone

1. See 28 U.S.C. § 1864.

directories leave out those who have no telephones. State jury lists are only as good as the state method of selection. Perhaps the district courts would be wise to utilize a combination of several sources.

■ The burden of showing the exclusion of a class lies on him who challenges the array.[2] In Windom v. United States, supra, we said that a court should not be required to undertake an investigation of a jury panel until it is suspect. The same rule applies to the array.

To sustain his position the plaintiff filed a sworn statement giving his analysis of the occupations of the individuals on the panel and called a statistician who testified from public documents as to the relative proportions of various economic groups in New Mexico. From such showing plaintiff asserts that there was no representation on the panel of his economic group and, hence, the entire array is suspect. The conclusion does not follow. A blind drawing of 66 names from a box containing 810 names not surprisingly may fail to include members of a certain group. Yet this does not detract from the propriety and fairness of the system used. This is not a case like Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244, in which different colored slips were used for the members of two groups.

■ As we see it, the exclusion of a group by chance selection in the drawing of a panel is no ground for suspicion of the exclusion of that group in the array. Something more must be shown. The stability of the jury system would be imperilled if a litigant could cast doubt upon the legality of the array by a showing that his particular group was not represented or not proportionately represented on the panel from which the petit jury for his case was to be selected.

In the case at bar, plaintiff's counsel made no effort to examine the question-naires even after such procedure was suggested to them by the trial court. It would seem reasonable that such an examination would have either proved or disproved the existence of grounds of suspicion.[3]

The clerk of the court was examined at length as to the selection of the key men. He selected such men for half of the state and the jury commissioner, Albert K. Mitchell, selected the remainder. The letter of instructions to the key men contained the following:

"We request your assistance in the preparation of a jury list for this court. We desire the names of ———— men and women residing in your county who would make good jurors, it being our desire to compile a jury list composed of good citizens from the several counties of the State representing a cross-section of the population, fairly apportioned as to sex and as to racial, economic and social groups."

The clerk testified that there was no discrimination and no effort at discrimination in the procedures followed by him and the jury commissioner.

Plaintiff complains of the fact that he did not get the names of the key men. When he had the clerk on the stand he did not ask him the names of the key men whom he, the clerk, had selected. Plaintiff argues that the court erred in refusing to order the attendance of the jury commissioner but such argument is without substance as the record discloses no effort to compel such attendance by the issuance and service of a subpoena pursuant to Rule 45, F.R.Civ.P., 28 U.S.C.

■■ The rule requiring a jury to be truly representative of a cross-section of the community and forbidding the systematic or arbitrary exclusion of members of any ethnic, racial, religious, so-

2. Windom v. United States, supra, at page 385; Frazier v. United States, 335 U.S. 497, 503, 69 S.Ct. 201, 93 L.Ed. 187, rehearing denied 336 U.S. 907, 69 S.Ct. 488, 93 L.Ed. 1072.

3. Examination of questionnaires was the procedure followed in Bary v. United States, 10 Cir., 248 F.2d 201, 206–207, certiorari denied 359 U.S. 934, 79 S.Ct. 649, 3 L.Ed.2d 635.

cial or economic group [4] does not mean that a banker is entitled to a jury on which another banker sits or that a day laborer have a jury on which a member of his group sits. The petit jury, the panel and the array are not suspect because of the absence of a member of a litigant's group from the trial jury or from the panel out of which the trial jury is selected. In the case at bar, the plaintiff failed to sustain the burden of establishing his challenge to the array and related motions.

Affirmed.

---

4. See Windom v. United States, supra, 260 F.2d at page 385, and Bary v. United States, supra, 248 F.2d at page 206, and cases there cited.