Marvin MALONE, Wenzell Wayne Cardell and Jessie Maner, Plaintiffs,

v.

Richard P. EMMET, William F. Thetford, Perry O. Hooper, and John R. Matthews, Sr., as members of the Board of Jury Supervisors of Montgomery County, Alabama, Richard P. Emmet, William F. Thetford, Eugene W. Carter, Circuit Judges of Montgomery County, Alabama, John R. Matthews, Sr., Clerk of the Circuit Court of Montgomery County, Alabama, and D. W. Crosland, District Attorney of Montgomery County, Alabama, Defendants.

Civ. A. No. 2620-N.

United States District Court
M. D. Alabama, N. D.
Dec. 28, 1967.

James D. Straiton, Montgomery, Ala., for plaintiffs.

M. R. Nachman, Jr. (of Steiner, Crum & Baker), and John R. Matthews, Jr. (of Ball & Ball), Montgomery, Ala., for defendants except Perry O. Hooper.

Jack Crenshaw (Crenshaw & Waller), Montgomery, Ala., for defendant Perry O. Hooper.

## ORDER

JOHNSON, Chief Judge.

This cause is now submitted upon the motion of the defendant members of the Board of Jury Supervisors of Montgomery County, Alabama, and the defendants Richard P. Emmet, William F. Thetford and Eugene W. Carter, Circuit Judges of Montgomery County, Alabama; John R. Matthews, Sr., Clerk of the Circuit Court of Montgomery County, Alabama, and D. W. Crosland, District Attorney of Montgomery County, Alabama, filed herein on December 5, 1967, and the separate motion of defendant Perry O. Hooper, as a

member of the Board of Jury Supervisors of Montgomery County, Alabama, filed herein on December 7, 1967, both of which motions seek dismissal of this action.

The plaintiffs through their complaint filed with the Clerk of this Court on December 4, 1967, seek injunctive and declaratory relief in connection with criminal prosecutions pending against each of them in the Circuit Court of Montgomery County, Alabama. Two of the plaintiffs are Negroes and the third is a Caucasian. Each of the plaintiffs, being financially unable to employ counsel, made application to the Circuit Court of Montgomery County, Alabama, for counsel, and pursuant to said applications the Court appointed the Honorable James D. Straiton, Attorney at Law, Montgomery, Alabama, to represent them in the criminal prosecutions. At the time plaintiffs' complaint was filed in this Court, the plaintiffs had been indicted by the Montgomery County, Alabama, Grand Jury. Two of the plaintiffs were by these indictments charged with armed robbery, and the other was charged with assault with intent to murder. The plaintiffs were arraigned in the state circuit court on November 14, 1967, at which time motions to quash the jury venire were filed on behalf of each. These motions were not ruled upon; the cases were set for trial on their merits to commence December 4 and December 6, 1967. The bases for plaintiffs' motions to quash the jury venire are:

(1) That the jury supervisors of Montgomery County, Alabama, are not eligible under the law to perform the functions required by such office for the reasons that:

(a) Some of the supervisors are circuit court judges and therefore hold another office of profit or trust; and

(b) John R. Matthews, Sr., a member of the Board of Jury Supervisors of Montgomery County, also holds the office of Clerk of the Circuit Court and, as such, is compensated on a fee basis; that Matthews, therefore, has a direct, personal and substantial financial interest in the conviction of defendants, and

(2) That the Board of Jury Supervisors for Montgomery County, Alabama, has systematically and intentionally excluded classes of prospective jurors from the jury roll and jury box of Montgomery County, Alabama, and, in doing so, has excluded from the Montgomery County jury roll the names of individuals of the "blue collar" or "working" class.

For these reasons, the plaintiffs say that the grand jury that indicted them and the petit jury that will try them are made up of individuals who do not represent a true cross section of the community.[1]

Plaintiffs asked this Court to issue a temporary restraining order restraining further prosecution of the cases against them in the circuit court and restraining further illegal action on the part of the Board of Jury Supervisors of Montgomery County, Alabama. This request for temporary restraining order without giving any notice to the defendants and without this Court's conducting any hearing was denied on December 5, 1967. Plaintiffs also seek preliminary and per-

---

1. This Court has been informed as of December 15, 1967, by the attorney for these plaintiffs that plaintiff Marvin Malone has now been tried and convicted for the offense of robbery and his punishment assessed at 15 years in the state penitentiary; that plaintiff Wenzell Wayne Cardell has now changed his plea of not guilty to guilty and has received a sentence of 10 years for robbery; his re-quest for probation is presently pending before the circuit court. The charge against plaintiff Jessie Maner for assault with intent to murder has been nol prossed. This, of course, moots this case insofar as Maner's claims are concerned; however, no motion has been filed upon behalf of either Cardell or Malone waiving any of the relief originally sought.

manent injunctions enjoining the authorities of Montgomery County, Alabama, from further prosecuting the cases against them in the circuit court until new jury supervisors have been appointed and until the jury rolls and jury box for said county include the names of individuals representing a true cross section of the community; additionally, plaintiffs request that this Court render a declaratory judgment declaring unconstitutional the statute creating the Board of Jury Supervisors for Montgomery County, Alabama,[2] and declaring further that the action on the part of the jury supervisors in systematically and intentionally excluding classes of prospective jurors from the jury roll and jury box of Montgomery County deprives these plaintiffs of basic constitutional rights.

■■ The law is quite clear that a jury roll and jury box must contain a representative cross section of the community. Scott v. Walker, 358 F.2d 561 (5th Cir. 1966); Billingsley v. Clayton, 359 F.2d 13 (5th Cir. 1966), cert. denied 385 U.S. 841, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966); Labat v. Bennett, 365 F.2d 698 (5th Cir. 1966); Brooks v. Beto, 366 F.2d 1 (5th Cir. 1966); Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966); Mobley v. United States, 379 F.2d 768 (5th Cir. 1967). In regard to the systematic exclusion of daily wage earners, compare Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); Windom v. United States, 260 F.2d 384 (10th Cir. 1958); Padgett v. Buxton-Smith Mercantile Co., 283 F.2d 597 (10th Cir. 1960), cert. denied 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961); United States v. Brandt, 139 F.Supp. 349 (N.D. Ohio 1956). However, this Court is clear to the conclusion that the plaintiffs' motion for injunctive relief should be denied. As observed, the criminal prosecutions against these plaintiffs were formally commenced several weeks prior to the filing of their complaint in this Court and all of the preliminary proceedings in

these criminal prosecutions had taken place well in advance of the filing of the complaint with this Court. As a matter of fact, the complaint was not filed in this Court until the date two of the plaintiffs' cases were to commence for trial on their merits in the state circuit court. Upon consideration of these facts, this Court can see no justification to support the exercise of its jurisdiction to enjoin the criminal prosecutions of these plaintiffs in the courts of the State of Alabama in order to afford plaintiffs an opportunity to pursue in this federal court their contentions relating to the legality of the Montgomery County Board of Jury Supervisors and the constitutionality of the composition of the Montgomery County jury roll and jury box. As this Court observed in Davis v. Jury Commission of Montgomery County, D.C., 261 F.Supp. 591:

" * * * Based on these facts, which were not before this Court when it entered its previous order of November 10, 1966, this Court can conceive of no justification to support the exercise of its jurisdiction to enjoin further criminal prosecution of this plaintiff in the courts of the State of Alabama in order that he might pursue his contentions relating to the constitutionality of the composition of the Montgomery County jury box and venire in this federal court. The case of Dombrowski v. Pfister, 380 U.S. 479 [85 S.Ct. 1116, 14 L.Ed.2d 22], relied on by the plaintiff, does not require a different result. The facts and circumstances in that case render it completely distinguishable and therefore inapposite. Clearly the normal and appropriate method of raising the primary issue Davis seeks to raise in this court is in the criminal prosecution presently pending in the Alabama Circuit Court. [Footnote omitted.] Certainly, a proper respect for the federal system requires this result. The fundamental principles of comity which govern our federal sys-

---

2. Act No. 118, Local Acts of Alabama 1939, p. 66, as amended by Act No. 536 (Regular Session 1967), Acts of Alabama 1967, p. 1281.

tem, as exemplified by § 2283, Title 28, United States Code,[2] have tradition-

"2. § 2283. 'A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'

ally prompted denial of federal injunctive relief affecting state prosecutions in such instances as now presented. Douglas v. City of Jeannette, 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324]; Stefanelli v. Minard, 342 U.S. 117 [72 S.Ct. 118, 96 L.Ed. 138]. A clear and forceful articulation of these principles was made by the Supreme Court in Stefanelli v. Minard, supra:

'The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.' 342 U.S. at 124, 72 S.Ct. at 121."

■■ All of this means that the normal and appropriate method of raising the issues these plaintiffs seek to raise in this Court is in the criminal prosecutions presently pending against them in the Circuit Court of Montgomery County, Alabama. It should be observed and emphasized, however, that that part of defendants' motions asking dismissal of this cause for the reason that this Court has no jurisdiction is completely without merit. Defendants' reliance upon this Court's opinion in Davis v. Jury Commissioner of Montgomery County, supra, to support the contention that this Court has no jurisdiction is erroneous. The basis for this Court's action in *Davis* was a *declination to exercise its jurisdiction*. An effort was made to emphasize this point when it was observed:

" * * * this Court can conceive of no justification to support the exercise of its jurisdiction to enjoin further criminal prosecution of this plaintiff in the courts of the State of Alabama * * "

This matter of jurisdiction where federal constitutional rights are involved was recently discussed by the Supreme Court of the United States in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (Dec. 5, 1967). In the *Zwickler* case, the New York penal laws made it a crime to distribute in quantity certain handbills containing statements concerning any candidate for election without also printing thereon the name of the printer and the names of the persons at whose instance the handbills were distributed. Zwickler was convicted of violating this penal statute by distributing anonymous handbills critical of the record of a Congressman who was seeking re-election in 1964. Zwickler invoked the jurisdiction of the federal district court under the Civil Rights Act, 28 U.S. C. § 1343, and the Declaratory Judgment Act, 28 U.S.C. § 2201, contending that the New York statute was overly broad to an extent that he was deprived of protection within the guaranties of the First Amendment to the Constitution of the United States. A three-judge district court applied the doctrine of abstention and dismissed the action, observing that Zwickler should present his constitutional challenge to the New York courts. The

Supreme Court of the United States reversed this action by the district court and in so doing discussed both jurisdictional and abstention questions normally presented in such cases. On the question of whether United States District Courts have jurisdiction in such cases, the Supreme Court stated:

"During most of the Nation's first century, Congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws. * * * But that policy was completely altered after the Civil War when nationalism dominated political thought [footnote omitted] and brought with it congressional investiture of the federal judiciary with enormously increased powers. The Act of March 3, 1875,[8] was the principal ' * *

"8. The statute granted the district courts 'original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and arising under the Constitution or laws of the United States, or treaties made, or shall be made, under their authority * * *.' Act of March 3, 1875, § 1, 18 Stat. 470. See generally Hart & Wechsler, The Federal Courts and the Federal System 727–733; Wright, Federal Courts § 17; Chadbourn & Levin, Original Jurisdiction of Federal Questions, 90 U.Pa.L.Rev. 639 (1942); Forrester, Federal Question Jurisdiction & Section 5, 18 Tulane L.Rev. 263 (1943); Forrester, The Nature of a 'Federal Question,' 16 Tulane L.Rev. 362 (1942); Mishkin, The Federal 'Question' in the District Courts, 53 Col.L.Rev. 157 (1953).

" 'This development in the federal judiciary, which in the retrospect seems revolutionary, received hardly a contemporary comment.' Frankfurter & Landis, supra, at 65. While there is practically no legislative history of the Act, see id., at 65–69, for a summary of what history is available, commentators are generally agreed that a broad grant of jurisdiction was intended. See, e.g., Forrester, The Nature of a 'Federal Question,' 16 Tulane L.Rev. 362, 374–385 (1942); Mishkin, The Federal 'Question' in the District Courts, 53 Col.L.Rev. 157, 160 (1953). This is not to say that this Court has read the congressional grant of power in the Act of 1875 as equated with the potential for federal jurisdiction found in Article III of the Constitution. See, e.g., National Mut. Ins. Co. etc. v. Tidewater Transfer Co., 337 U.S. 582, 613–615, [69 S.Ct. 1173, 1188–1189, 93 L.Ed. 1556] (opinion of Rutledge, J.); Shoshone Mining Co. v. Rutter, 177 U.S. 505 [20 S.Ct. 726, 44 L.Ed. 864].

measure of the broadening federal domain in the area of individual rights.' McNeese v. Board of Education, etc., 373 U.S. 668, 673 [83 S.Ct. 1433, 1436, 10 L.Ed.2d 622]. By that statute ' * * Congress gave the federal courts the vast range of power which had lain dormant in the Constitution since 1789. These courts ceased to be restrictive tribunals of fair dealing between citizens of different states and became the *primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States.' (Emphasis added.) Frankfurter and Landis, supra, at 65. Indeed, even before the 1875 Act, Congress in the Civil Rights Act of 1871, [footnote omitted] subjected to suit, 'Every person who, under color of any statute * * * subjects, or causes to be subjected, any citizen of the United States or other person * * * to the deprivation of any rights * * * secured by the Constitution and laws * * *.' 42 U.S.C. § 1983; and gave the district courts 'original jurisdiction' of actions '[t]o redress the deprivation, under color of any state law * * * of any right * * * secured by the Constitution * * *.' 28 U.S. C. § 1343(3).

"In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, ' * * * to guard, enforce, and protect every right granted or secured by the Constitution of the United States

* * *.' Robb v. Connolly, 111 U.S. 624, 637 [4 S.Ct. 544, 551, 28 L.Ed. 542]."

Furthermore, when the State has provided no satisfactory manner in which a proceeding may be brought to challenge a statute—and the petition now presented to this Court so alleges—injunctive relief by a federal court is entirely proper. See Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. See also, Cooper v. Hutchinson, 3 Cir., 184 F.2d 119.

On the question of abstention, the Supreme Court in *Zwickler* observed:

"The analysis in United States v. Livingston, D.C., 179 F.Supp. 9, 12–13, affirmed, Livingston v. United States, 364 U.S. 281, [80 S.Ct. 1611, 4 L.Ed.2d 1719], is the guide to decision here:

'Regard for the interest and sovereignty of the state and reluctance needlessly to adjudicate constitutional issues may require a federal District Court to abstain from adjudication if the parties may avail themselves of an appropriate procedure to obtain state interpretation of state laws requiring construction. Harrison v. N. A. A. C. P., 360 U.S. 167, [79 S.Ct. 1025, 3 L.Ed.2d 1152]. The decision in *Harrison,* however, is not a broad encyclical commanding automatic remission to the state courts of all federal constitutional questions arising in the application of state statutes. NAACP v. Bennett, 360 U.S. 471 [79 S.Ct. 1192, 3 L.Ed.2d 1375]. Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it. Any other course would impose expense and long delay upon the litigants without hope of its bearing fruit.'

"In Turner v. City of Memphis, Tenn., 369 U.S. 350 [82 S.Ct. 805, 7 L.Ed.2d 762], (per curiam), we vacated an abstention order which had

been granted on the sole ground that a declaratory judgment action ought to have been brought in the state court before the federal court should be called upon to consider the constitutionality of a statute alleged to be violative of the Fourteenth Amendment. In McNeese v. Board of Education, 373 U.S. 668 [83 S.Ct. 1433, 10 L.Ed.2d 622], we again emphasized that abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim. After examining the purposes of the Civil Rights Act, under which that action was brought, we concluded that '[w]e would defeat those purposes if we held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court.' 373 U.S., at 672 [83 S.Ct. 1433, at 1436, 10 L.Ed.2d 622]. For the 'recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law.' England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 415–416 [84 S.Ct. 461, 465, 11 L.Ed.2d 440].

"These principles have particular significance when, as in this case, the attack upon the statute on its face is for repugnancy to the First Amendment. In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect. See Dombrowski v. Pfister, 380 U.S. 479, 486–487 [85 S.Ct. 1116, 1120–1121, 14 L.Ed.2d 22]; Baggett v. Bullitt, supra, [377 U.S.] at 378–379, [84 S.Ct. 1316, at 1326, 12 L.Ed.2d 377]; NAACP v. Button, supra, [371 U.S.] at 433 [83 S.Ct. 328, at 338, 9 L.Ed.2d 405]; cf. Garrison v. State of Louisiana, 379 U.S. 64, 74–75 [85 S.Ct. 209, 215–216, 13 L.Ed.2d 125]; Smith v. People of State of California, 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 215]" (Footnotes omitted.)

It is equally clear that under the doctrine of *Douglas,* supra and *Stefanelli,* supra, as applied by this Court in Davis v. Commissioner of Montgomery County, supra, injunctive relief should not be granted in this case by this Court at this time.

■ The question remains, however, as to whether this Court shall assume jurisdiction for the purpose of inquiring into and possibly granting the declaratory judgment relief sought by these plaintiffs. On this point, *Zwickler* emphasizes that where a request for a declaratory judgment is made and an application is also made for an injunction against the enforcement of an allegedly unconstitutional state statute, the request for declaratory judgment and the request for injunctive relief must be considered independently. In this connection the Court stated:

"We shall consider *first* whether abstention from the declaratory judgment sought by appellant would have been appropriate in the absence of his request for injunctive relief, and *second,* if not, whether abstention was nevertheless justified because appellant also sought an injunction against future criminal prosecutions * * * "

■ In actions for declaratory and injunctive relief which have a direct bearing on pending state criminal litigation, Congress has declared what is—at a minimum (see Cameron v. Johnson, D.C., 262 F.Supp. 873)—a strong policy of federal nonintervention in orderly state proceedings. 28 U.S.C. § 2283. Generally, where the only relief sought is declaratory, the exercise of jurisdiction by a district court is completely discretionary. 28 U.S.C. § 2201. Public Service Commission of Utah v. Wycoff Company, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291. See, also, 6A Moore, Federal Practice 57.08 (2d ed., rev. 1966). With all of these principles in mind, this Court is of the opinion that a federal court should not, in the absence of some *special circumstances,* intervene even by the way of declaratory judgment in state criminal

prosecutions. Special circumstances, of course, will appear if it is necessary for the federal court to protect some overriding federally guaranteed rights such as voting, Mitchell v. Johnson, 250 F. Supp. 117 (M.D.Ala.1966), and White v. Crook, 251 F.Supp. 401 (M.D.Ala.1966), or disqualification of a judge with a direct pecuniary interest in the case, Hulett v. Julian, 250 F.Supp. 208 (M.D.Ala. 1966). Considering all of these circumstances, this Court concludes that it should abstain from taking jurisdiction of the declaratory judgment aspect of this Sixth Amendment rights case involving procedural due process questions. It should be emphasized, however, that although this Court declines to intervene and to grant the plaintiffs either injunctive relief or declaratory relief in this case, injunctive and declaratory relief will be granted in the discharge of the duty the law places upon this Court to guard, enforce and protect federally guaranteed constitutional rights where special circumstances do exist. On this point it should be further emphasized that in *Zwickler* the federal court was called upon to decide a question of *substantive due process,* namely, the underlying constitutionality of the criminal statute under which Zwickler had been prosecuted and was being threatened with future prosecution. Moreover, as the Court in *Zwickler* was careful to observe, the asserted constitutional act was the First Amendment guarantee of free speech. The Supreme Court in *Zwickler,* as this Court in *Davis* did, places free speech and other First Amendment rights in a special category. In this connection see Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. In recognizing and emphasizing this "scale of constitutional values," on which First Amendment rights enjoy a position at the highest level, the Supreme Court in *Zwickler* stated:

"These principles have particular significance when, as in this case, the attack upon the statute on its face is for repugnancy to the First Amendment. In such case to force the plain-

tiff who has commenced a federal action [at a time when no state court proceedings are pending] to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect."

In consideration of the foregoing, it is ordered that defendants' motions to dismiss be and each is hereby granted. It is further ordered that this cause be and the same is hereby dismissed. It is further ordered that no costs be taxed in this proceeding.